JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Antwan Williams, appeals his conviction and sentence in the Cuyahoga County Court of Common Pleas, Criminal Division. Upon our review of the arguments of the parties and the record presented, we affirm the conviction and sentence of the trial court for the reasons set forth below.
 {¶ 2} Antwan Williams ("Williams") contacted police at approximately 2:00 a.m. on the morning of August 14, 2002 stating that he had seen a dead body. Williams led police to the body of 15-year-old C.M. ("the victim"), whom Williams had met during the evening of August 13, 2002. Upon examination, the victim was found to have sustained blunt force trauma to the head, resulting in multiple fractures to her skull and facial bones and massive brain injuries. The head trauma caused the victim's death.
 {¶ 3} Williams agreed to give the police a voluntary statement on August 14, 2002. At first, Williams indicated that he had met the victim at a gas station between approximately 4:40 p.m. and 5:00 p.m. on August 13, 2002, where they had a brief conversation and then proceeded behind the station to have sex. Williams stated that after their encounter, he and the victim went their separate ways. He then indicated that, several hours later, he came across the body of this same young woman in the woods in the area known as Kingsbury Run. Williams stated that upon discovering her, he asked if she was all right and, upon receiving no response, turned her body over with his shirt. He then went home and threw the shirt in a trash can before flagging down police. Williams was noticed to have blood on his shoes and shorts and was not wearing a shirt at that time. Several items were recovered at the crime scene on the night of the murder, including a cement block with blood on it. When investigators returned to the murder scene during daylight hours, approximately one week later, a used condom containing seminal fluid was discovered.
 {¶ 4} Police attempted to corroborate Williams's story during their investigation, without success. Jerry Robinson, a friend of Williams, stated that he and Williams had picked up the victim from a local gas station, then he dropped off Williams and the victim at Williams's residence at approximately 11:30 p.m. on the night of August 13, 2002. Robinson also stated that Williams contacted him subsequent to the murder to ask Robinson to assist him in providing an alibi for that night. Myron Currie, Williams's father, with whom he resided, indicated that Williams was indeed out with Robinson on the night in question, and he had not returned home by 11:30 p.m. Currie was awakened at approximately 2:00 a.m. by the police, who had discovered the bloody shirt in a garbage can outside the home; Currie could not remember it being there before that night. Currie also stated that Williams had contacted him via voicemail and asked him to tell police that he had not left with Robinson that evening.
 {¶ 5} Several days later, police detectives interviewed Williams once again. After police indicated that they had spoken with several other individuals, Williams's story changed. He began to cry and admitted that he had fabricated much of his previous statement. He admitted that he had actually had sex with the victim in the Kingsbury woods near his home and that she had then requested money for bus fare. When he refused to give her any money, the victim became angry and stated that she was going to call the police and her boyfriend to report that "[the appellant] had done something to her" (Tr. 905). Williams then admitted that he had been smoking illegal drugs earlier in the day, that he "blacked out" and that he killed the victim. When police requested another written statement from him, he refused and asked to speak with an attorney.
 {¶ 6} Hair, blood and saliva samples were subsequently taken from Williams. Upon forensic analysis, the blood found on his shoes, shorts and shirt, as well as the blood found on the cement block recovered at the scene, matched the DNA profile of the victim. The seminal fluid found in the condom at the murder scene matched the DNA of Williams.
 {¶ 7} Williams was charged with two counts of aggravated murder with felony murder specifications, in violation of R.C. 2903.01. He was also charged with one count of kidnaping (R.C. 2905.01) and one count of rape (R.C. 2907.02), both with repeat violent offender specifications stemming from a prior juvenile conviction for involuntary manslaughter. A hearing was held on January 6, 2003, to determine whether Williams was a mentally retarded individual not subject to the death penalty, pursuant to Akins v. Virginia (2002), 122 S.Ct. 2242 and State v. Lott (2002),97 Ohio St.3d 303. He was found to be mentally retarded and, thus, not subject to the death penalty. A jury trial commenced wherein Williams was found guilty of aggravated murder, without the felony murder specification. He was found not guilty on all remaining counts. The trial court sentenced him to 20 years to life in prison.
 {¶ 8} Williams presents five assignments of error for our review.
 {¶ 9} "I. The court erred when it failed to instruct the jury on the lesser included offense of voluntary manslaughter."
 {¶ 10} "II. The court erred in denying appellant's motion to suppress statements due to the appellant's retardation and due to the coercive offer regarding the death penalty."
 {¶ 11} "III. The court erred in allowing gruesome and duplicative photographs of the decedent and in allowing the jury to view a photograph that unfairly engendered sympathy for the victim."
 {¶ 12} "IV. The court erred in allowing witness Robinson to `translate' a voicemail message from defendant Williams."
 {¶ 13} "V. Appellant charles eskridge's (sic) conviction for robbery (sic) was based on insufficient evidence and against the manifest weight of the evidence."
 Lesser Included Offense {¶ 14} Appellant argues that the trial court erred by failing to instruct the jury as to the charge of voluntary manslaughter. The trial court should give an instruction on a lesser included offense only when the evidence warrants it. State v. Johnson (1988), 36 Ohio St.3d 224,226. The trial court must charge the jury on a lesser included offense only when the evidence would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense. State v.Thomas (1988), 40 Ohio St.3d 213 at ¶ 2 of the syllabus. For example, a trial court will give an instruction on the lesser included offense of involuntary manslaughter in a murder trial only when the jury could reasonably find against the state on the element of purposefulness and still find for the state on the defendant's act of killing another. However, an instruction is not warranted every time "some evidence" is presented on a lesser included or inferior degree offense. State v. Shane
(1992), 63 Ohio St.3d 630, 632-33.
 {¶ 15} R.C. 2903.03 sets forth, in pertinent part, "No person, while under the influence of sudden passion or in a sudden rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall cause the death of another." Before giving an instruction on voluntary manslaughter in a murder case, the trial court must determine "whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." State v.Shane (1992), 63 Ohio St.3d 630 at 635. For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Id; State v. Braden,98 Ohio St.3d 354, 2003-Ohio-1325.
 {¶ 16} In the instant case, appellant contends his assertion that he and the victim had a verbal confrontation regarding his refusal to provide bus fare to the victim and that she "pushed him" and threatened to call the police or her boyfriend (Tr. at 905) prior to her death forms the basis for an instruction on the lesser charge of voluntary manslaughter. Courts have declined to find that words alone are enough to provoke an aggressor to the use of deadly force. State v. Shane, supra;State v. Deem (1988), 40 Ohio St.3d 205. We decline to hold that the victim's request for bus fare or the verbal threats appellant alleges she made would have been sufficient to arouse the passions of an ordinary person beyond control. Accordingly, we find no error in the trial court's denial of the requested jury instruction, and the first assignment of error is overruled.
 Motion to Suppress {¶ 17} In a suppression hearing, the evaluation of the evidence and the credibility of witnesses are issues for the trier of fact. State v.Mills (1992), 62 Ohio St.3d 357; State v. McCulley (Apr. 28, 1994), Cuyahoga App. No. 64470. The trial court assumes the role of trier of fact in a suppression hearing and is therefore in the best position to resolve questions of fact and evaluate credibility of witnesses. Statev. Klein (1991), 73 Ohio App.3d 486. Accordingly, an appellate court is bound to accept the trial court's findings of facts if they are supported by competent, credible evidence. Klein, supra. Therefore, we examine the record presented to determine whether substantial evidence exists to support the trial court's decision. State v. Smith, Cuyahoga App. 79749, 2002-Ohio-1069.
 {¶ 18} A defendant may waive the rights conveyed in a Miranda
warning provided the waiver is made knowingly, intelligently and voluntarily. State v. Dailey (1990), 53 Ohio St.3d 88, 91. Individuals with a lower I.Q. are capable of knowingly and intelligently waiving their Fifth Amendment rights. See State v. Hill (1992), 64 Ohio St.3d 313,319; State v. Edwards (1976), 49 Ohio St.2d 31, 39. The question of whether a waiver was knowing and intelligent is a factual issue that must be determined based on the totality of the circumstances. State v.Mulkey (1994), 98 Ohio App.3d 773, 781. Mental capacity is only one factor to be considered in making the determination. Id. "The constitution does not require that a criminal suspect know and understand every possible consequence of waiver of the Fifth Amendment privilege."Colorado v. Spring (1987), 479 U.S. 564, 574.
 {¶ 19} Appellant argues that his statements to the police should have been suppressed due to his low I.Q.; that is, that a mentally challenged person is not able to make a voluntary, knowing and intelligent statement to the police. Certainly, a person's level of mental functioning must be taken into account when reviewing the admissibility of statements made to police; however, a court must take into account the totality of circumstances surrounding the investigation, including the age, mentality, prior criminal experience of the accused, the length, intensity and frequency of interrogation, the existence of physical deprivation or mistreatment, and the existence of threat or inducement. State v. Brewer (1990), 48 Ohio St.3d 50, citingState v. Edwards (1976), 49 Ohio St.2d 31, ¶ 2 of the syllabus, vacated as to death penalty, Edwards v. Ohio (1978), 438 U.S. 911.
 {¶ 20} Appellant argues that because the police, prior to eliciting a statement from him, told him that if he was charged with murder he could be subject to the death penalty, his statements were not voluntary. We disagree. Trial testimony indicates that appellant was not obviously impaired when he flagged down the police, nor did he appear to suffer from any form of mental deficiency, neither at the crime scene nor at the time he gave his statements to the police (Tr. 131, 142). Appellant may have a deficiency in intelligence and learning, but he was otherwise functional, communicative and able to care for himself. The appellant had enough presence of mind to attempt to get rid of his bloody T-shirt, and to attempt to create an alibi by contacting his father and his friend via telephone. He also lied to the police in his first written statement about what happened on the night in question. The fact that he corrected his earlier fabrication in subsequent interrogations does not per se mean the statements he gave were somehow coerced or involuntary. Further, there is no indication that the appellant was under any undue interrogatory stress during his questioning by police on either occasion. While the appellant's low I.Q. may have saved him from the death penalty, it did not impair him to the point that he was unable to make a knowing, voluntary and intelligent statement to the police.
 {¶ 21} Under the "totality of circumstances" test, the mention of the death penalty by police is not coercive and does not rise to the level of "threat or inducement" as contemplated by Edwards. Thus, the confessions are properly admissible, and appellant's second assignment of error must fail.
 Photographs and Evid.R. 403 {¶ 22} In the case of State v. Maurer (1984), 15 Ohio St.3d 239,473 N.E.2d 768, the Ohio Supreme Court stated in paragraph seven of the syllabus: "Properly authenticated photographs, * * * are admissible * * * if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number."
 {¶ 23} The Maurer court went on to state at pages 264-266: "Under Evid.R. 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court. See State v. Wilson (1972),30 Ohio St.2d 199, 203-204 (autopsy photos). To be certain, a trial court may reject a photograph, otherwise admissible, due to its inflammatory nature if on balance the prejudice outweighs the relative probative value. State v. Woodards (1966), 6 Ohio St.2d 14, 25. `The trial court has broad discretion in the admission * * * of evidence and unless it had clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere.'" State v.Hymore (1967), 9 Ohio St.2d 122, 128; see State v. Slagle (1992),65 Ohio St.3d 597.
 {¶ 24} The Sixth Circuit Court of Appeals had a similar case before it in United States v. Brady (C.A. 6, 1979), 595 F.2d 359. That case involved a bank robbery and homicides in which the defendant had stipulated the deaths had been caused by gunshot wounds. Despite the stipulation, the prosecution introduced photographs of the bloody bodies lying on the floor. Interpreting an objection to these photographs under Fed.R.Evid. 403, the Sixth Circuit found that the photographs were admissible and went on to hold that relevant evidence, challenged as being outweighed by its prejudicial effects, should be viewed in a light most favorable to the proponent of the evidence, maximizing its probative value and minimizing any prejudicial effect to one opposing admission. Id.
 {¶ 25} In the instant case, the prosecution admitted numerous photographs into evidence, including several crime scene photos and several autopsy photos depicting the nature of the injuries which caused the victim's death. These photographs are particularly gruesome considering the massive injuries sustained as a result of the blunt impact trauma to the back of her head. However, the photographs do accurately depict the nature of the victim's demise and the area in which her body was found. We cannot find that prejudicial effect, if any, outweighed the probative value of the photographs.
 {¶ 26} Due to the damage to the victim's appearance caused by her injuries, the prosecution also introduced a photograph of the victim, a high-school student, which was taken before her death. Predeath photographs may be relevant and probative for identification purposes.State v. Roe (1989), 41 Ohio St.3d 18, 22-23; State v. Davie (1997),80 Ohio St.3d 311. The prosecution in this case sought to introduce one predeath photograph of the victim for identification purposes, not merely to attempt to inflame the senses of the jury. While it is impermissible to admit photographs or other personal information concerning the victim solely to appeal to the emotions of the jury, the mere mention of the victim's personal situation, or, as here, the introduction of a single photo to identify the victim does not prejudice the appellant. Payne v.Tennessee (1991), 501 U.S. 808; State v. Combs (1991), 62 Ohio St.3d 278. Indeed, the victim cannot be separated from the crime. State v. Lorraine
(1993), 66 Ohio St.3d 414, 420. Therefore, we find that the trial court did not abuse its discretion in allowing the autopsy photos and predeath photo of the victim, and appellant's third assignment of error is overruled.
 Voicemail Tape {¶ 27} Prosecution witness Jerry Robinson received a telephone call from the appellant after he had been arrested for the murder of the victim. The appellant left a message on Robinson's voicemail, and the message was recorded by police. The substance of the message was that appellant was attempting to coerce Robinson into giving false information to the police in their investigation as to his whereabouts on the night in question. The audiotape was played in open court in the presence of the jury. It appears that the message was somewhat unintelligible, as reflected by the trial court's statement that "no one can understand the defendant's voice in this message" (Tr. at 669). After an in camera review of the tape and the written transcript that had been prepared by the prosecution, the court conducted a voir dire of Robinson (outside the presence of the jury) to determine whether he could understand what was being said on the tape. Witness Robinson was then allowed to "translate" the message during his testimony and in the presence of the jury, over defense objection, because he was familiar with the defendant's voice and the slang terms that defendant used during the message. The written transcript of the message was identified by Robinson during his testimony as a fair and accurate representation of the substance of the message.
 {¶ 28} Appellant does not argue that the voice on the tape was not his or that Robinson misinterpreted what appellant was requesting in the message. Clearly, the statement is an admission of a party opponent and is not hearsay under Evid.R. 801(D)(2); the admission of the tape itself was not an abuse of the trial court's discretion. The question is whether Robinson should have been allowed to testify as to the written transcript and what was said on the tape.
 {¶ 29} Appellant seeks to characterize Robinson as a "translator" under Evid.R. 604. We decline to extend that rule to this situation; Robinson was not acting as a translator of, for example, a document from a foreign language to English, but was instead asked to explain his understanding of a specific message left by the appellant for him. Defense counsel had ample opportunity to cross-examine him on this issue, and we find that the trial court's decision to allow the testimony was not unreasonable, unconscionable or arbitrary. The testimony may have been "damaging" to appellant, as he points out, but it did not prejudice his right to a fair trial. Appellant's fourth assignment of error is overruled.
 Insufficiency and Manifest Weight {¶ 30} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486. A conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, citing Jackson v.Virginia (1979), 443 U.S. 307.
 {¶ 31} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass
(1967), 10 Ohio St.2d 230. On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Statev. Jenks (1991), 61 Ohio St.3d 259; Jackson v. Virginia (1979),443 U.S. 307.
 {¶ 32} Sufficiency of the evidence is subjected to a different standard than is manifest weight of the evidence. Article IV, Section3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. City of Cleveland (1948),150 Ohio St. 303, 345. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. Statev. Eley (1978), 56 Ohio St.2d 169; State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 33} The United States Supreme Court recognized the distinctions in considering a claim based upon the manifest weight of the evidence as opposed to sufficiency of that evidence. The court held in Tibbs v.Florida (1982), 457 U.S. 31 that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43. Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983),20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 34} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Martin at 720.
 {¶ 35} We find that there is substantial evidence to uphold the appellant's conviction. In addition to the DNA evidence of the victim's blood on the appellant's clothes and person, the record contains the defendant's own statements to the police as well as his DNA found in a used condom at the crime scene. Further, witness testimony places the appellant with the victim at approximately 11:30 p.m., a short time prior to her death. Appellant's contention that his innocence was evidenced by the fact that he led police to her body is disingenuous; appellant was merely looking for a way to explain the fact that he was covered in the victim's blood. Finally, trial testimony indicated that appellant tried to convince friends and family members to supply him with an alibi for the night of the murder.
 {¶ 36} In addition, we find that there is substantial evidence of prior calculation and design. "Prior calculation and design" has been defined by Ohio courts as "the presence of sufficient time and opportunity for the planning of an act of homicide." State v. Cotton
(1978), 56 Ohio St.2d 8, ¶ 3 of the syllabus. The finding of prior calculation and design turns upon the particular facts and evidence presented at trial and must be determined on a case-by-case basis. Statev. Taylor (1997), 78 Ohio St.3d 15. Three inquiries may assist in determining whether prior calculation and design exist: (1) Did the accused and the victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or the murder site? (3) Was the act drawn out or "almost instantaneous eruption of events?" Id., citing State v. Jenkins (1976),48 Ohio App.2d 99; see State v. Braden (2003) 90 Ohio St.3d 354.
 {¶ 37} In the instant case, the appellant and the victim were strangers to each other until the night of the murder when appellant and his friend, Jerry Robinson, picked up the victim at a bus stop and spent the evening riding in Robinson's vehicle until he dropped the appellant and the victim off at the appellant's home. The victim was found in a secluded area of woods near the appellant's home; clearly, he gave thought to choosing an out-of-the way murder site. Though the actual killing of the victim may have taken a mere moment or two, the events of that night can not be considered "an instantaneous act," but instead consisted of a plan that took hours, first to lure the victim to his home and then to proceed to the crime scene. Therefore, we find that there is sufficient evidence to show prior calculation and design.
 {¶ 38} Finally, we conclude that the jury's verdict was not against the manifest weight of the evidence. The copious amount of evidence, as discussed above, could clearly lead a jury to reasonably conclude that the State had proved its case beyond a reasonable doubt. The case at bar does not provide one of the rare occasions on which the jury lost its way; to the contrary, the amount of credible evidence points only to the appellant's guilt. Accordingly, appellant's fifth assignment of error is overruled.
Judgment affirmed.
ANNE L. KILBANE, P.J., AND JAMES J. SWEENEY, J., CONCUR.