DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Pedro Diaz, appeals his conviction entered by the Lucas County Court of Common Pleas in the above-captioned case. For the reasons that follow, we affirm in part, and reverse in part, the judgment of the trial court.
 {¶ 2} On May 18, 2005, appellant was charged in a two-count indictment. Count 1 charged him with aggravated murder in violation of R.C. 2903.01(B) and (F), *Page 2 
and Count 2 charged him with aggravated robbery in violation of R.C.2911.01(A)(1). Each count included an attendant firearm specification.
 {¶ 3} At arraignment, the trial court found appellant to be indigent and appointed two attorneys on his behalf: attorney Myron Duhart and attorney Matthew Fech. At that same proceeding, appellant entered a plea of not guilty.
 {¶ 4} On July 2, 2005, just prior to a hearing on a motion to suppress evidence that had been filed by appellant's counsel, appellant requested the appointment of new counsel. Initially, appellant stated that he felt he was being misrepresented. When the court responded by stating that it had appointed two well-respected attorneys, appellant simply stated, "Your Honor, I don't feel comfortable with these gentlemen right here, Your Honor. * * * I need a new attorney."
 {¶ 5} Appellant's request was denied, and the hearing went forward. At issue in the suppression hearing was the admissibility of appellant's statement to police. Testimony was adduced, and a videotape of appellant's statement was admitted for the court's review. On August 8, 2005, the trial court issued an order denying appellant's motion to suppress.
 {¶ 6} On October 24, 2005, the matter proceeded to jury trial. Minutes before trial was scheduled to begin, appellant stated that his family would be retaining their own attorney for him. The trial court declined to continue the case, and the trial went on without delay. *Page 3 
 {¶ 7} At trial, the following facts were adduced. On January 10, 2004, an armed robbery took place at Tamara's Carryout, in Lucas County, Ohio. Forty-seven year old Misada Shalan, who was present inside the carryout at the time of the robbery, died from a single gunshot wound to her head.
 {¶ 8} There were three participants in this crime: appellant, Ivan Garcia, and Ronald Whitfield. Garcia, who had helped plan the robbery, waited outside in a stolen Jeep Cherokee while Whitfield and appellant entered the store. Whitfield entered first, armed with an assault rifle. Appellant, carrying a .38 caliber handgun, followed immediately behind and, upon entering the store, fired his handgun in the air at least three times. Whitfield fired his weapon once, killing Misada with a single round to the head.
 {¶ 9} After the shooting, appellant instructed Whitfield to get the money from Shalan's husband, Fuad Shalan. Whitfield did as he was told, then handed the money to appellant. Whitfield and appellant then left the store, jumped into the stolen car and, together with Garcia, fled the scene. The three went to a bar, where they divided the money taken in the robbery. Later, Whitfield and Diaz burned the stolen car.
 {¶ 10} On October 26, 2005, the jury found appellant guilty of the lesser included offense of murder, with the attendant firearm specification, and guilty of aggravated robbery, with the attendant firearm specification.
 {¶ 11} On November 1, 2005, appellant was sentenced to serve 15 years to life in prison for the murder, and eight years in prison for the aggravated robbery, with the two sentences to be served consecutively. The trial court specifically based its consecutive *Page 4 
sentence on judicial findings of fact pursuant to R.C. 2929.14(E)(4)(b). Appellant was additionally sentenced to serve three years each on the firearm specifications, with those sentences ordered to be served concurrently to one another but consecutively to the sentences for the murder and aggravated robbery.
 {¶ 12} Appellant timely filed a notice of appeal, raising the following assignments of error:
 {¶ 13} I. "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS HIS STATEMENT."
 {¶ 14} II. "THE SENTENCE IMPOSED BY THE TRIAL COURT WAS EXCESSIVE AND CONTRARY TO LAW WHEN THE SENTENCE EXCEEDED THE MINIMUM TERM OF IMPRISONMENT ON THE BASIS OF FINDINGS MADE BY THE TRIAL JUDGE PURSUANT TO A FACIALLY UNCONSTITUTIONAL STATUTORY SENTENCING SCHEME."
 {¶ 15} III. "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO INQUIRE AS TO APPELLANT'S REPEATED REQUESTS FOR NEW COUNSEL."
 {¶ 16} We begin with appellant's first assignment of error, wherein he asserts that the trial court erred in denying his motion to suppress his statement to police. To determine whether a confession is voluntary or involuntary, courts use a "totality of the circumstances" approach, wherein they take into consideration the age, mental capacity, prior criminal experience of the accused, the length, intensity and frequency of *Page 5 
interrogation, the existence of physical deprivation or mistreatment, and the existence of any threat or inducement. State v. Williams, 8th Dist. No. 82364, 2003-Ohio-6342, ¶ 18, 19.
 {¶ 17} Appellant was 27 years old at the time he made his statement, and by his own report, this was not his first contact with the justice system. Before the statement was taken, the interviewing officer, Toledo Police Detective Vincent Mauro, ensured that appellant was properly Mirandized. At that time, appellant indicated understanding of his rights, and did not demonstrate any confusion or ignorance as those rights were being explained to him. Detective Mauro asked appellant whether any threats or promises had been made in order to get him to make a statement. Appellant answered, "No." The interview took place over a period of approximately one and one-half hours. There was no evidence of physical deprivation or mistreatment.
 {¶ 18} At the beginning of the interview, appellant lied about his involvement with the robbery and shooting death at the carryout. His initial story was that he knew nothing of the crime and, in fact, was in Chicago on the day it occurred. Detective Mauro persisted with his questioning, after which appellant admitted to some, minimized, involvement in the crime and then, finally, told the truth.
 {¶ 19} As part of Detective Mauro's questioning, he made repeated mention that appellant could receive the death penalty in connection with this case. He also indicated that if appellant were to cooperate, he would speak to the prosecutor on appellant's behalf. According to appellant, Mauro's remarks concerning the death penalty, together *Page 6 
with the promise of leniency "make appellant's statements to the detective suspect." We disagree, and find that, under the totality of the circumstances, neither the references to the possibility of the death penalty, nor the promise of leniency — either alone or in combination — were coercive. Certainly, they did not rise to the level of a "threat" or "inducement" sufficient to render appellant's confession inadmissible. Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 20} Next, we consider appellant's second assignment of error, wherein he challenges his sentence as being violative of State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, and, further, states that he should be resentenced to minimum, concurrent sentences. Appellant's challenge is well-taken to the extent that we find his sentence to be unconstitutional under State v. Foster, supra. In Foster, the Supreme Court of Ohio held that certain sections of Ohio's felony sentencing scheme, in particular those which involved judicial fact-finding were unconstitutional. Among the sections affected by this decision was R.C.2929.14(E)(4), which relates to consecutive sentences. Id., at paragraph three of the syllabus. Because the trial court relied on this formerly-mandated-but-now-declared-unconstitutional section, we are required to find appellant's second assignment of error well-taken and to remand this matter for resentencing.
 {¶ 21} We disagree with appellant's claim that, upon resentencing, he is entitled to minimum, concurrent sentences. According to appellant, "as a matter of due process and ex post facto" Foster's severance remedy cannot be retroactively applied to persons such as himself who committed their crimes prior to the release of the Foster decision. We *Page 7 
note that this court has previously considered the Ex Post Facto and due process arguments, and has rejected them each time. See State v.Coleman, 6th Dist. No. S-06-023, 2007-Ohio-448; State v. Friess, 6th Dist. No. L-05-1307, 2007-Ohio-2030.
 {¶ 22} Because appellant is entitled to resentencing underFoster, but not, as he claims, to minimum, concurrent sentences, we find appellant's second assignment of error well-taken in part, and not well-taken in part.
 {¶ 23} Lastly, we consider appellant's third assignment of error, wherein he claims that the trial court erred in failing to inquire as to appellant's repeated requests for new counsel. The law concerning discharge and substitution of court-appointed counsel was recently set forth by the Supreme Court of Ohio in State v. Ketterer,111 Ohio St.3d 70, 2006-Ohio-5283:
 {¶ 24} "* * * `To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.' * * * Moreover, ` "[a]n indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel."` * * *
 {¶ 25} "Further, we review the trial court's decision as to replacement of counsel `"under an abuse-of-discretion standard."` * * * If the complaint is unreasonable, the trial court may `require the trial to proceed with assigned counsel participating.' * * * `Disagreements] between the attorney and client over trial tactics or approach also do not warrant a substitution of counsel.'" Id., at ¶ 149, 150 (citations omitted). *Page 8 
 {¶ 26} Here, there were two occasions on which appellant requested new counsel: once before hearing on the motion to suppress, and once in the minutes before trial. In neither case was there any evidence or allegation of a breakdown in the attorney-client relationship of such magnitude as to jeopardize appellant's right to effective assistance of counsel. Nor is there anything in the record to suggest any other "good cause" that would warrant substitution of counsel.
 {¶ 27} In the first instance, appellant merely stated, without elaboration, that he did not feel "comfortable" with his counsel. In the second instance, appellant gave no reason at all for wanting alternate counsel; he merely stated — six months after his arraignment, and just minutes before trial — that his family would (at some unspecified point in the future) retain private counsel. We note that "[i]n evaluating a request for substitute counsel, the court must balance `the accused's right to counsel of his choice [against] the public's interest in the prompt and efficient administration of justice.'" State v. Murphy,91 Ohio St.3d 516, 523, 2001-Ohio-112, quoting United States v.Jennings (C.A.6, 1996), 83 F.3d 145, 148. In neither instance did the trial court abuse its discretion in denying appellant's requests for new counsel. Accordingly, appellant's third assignment of error is found not well-taken.
 {¶ 28} For all of the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed in part, and reversed in part, with the judgment being reversed only with respect to appellant's sentence. This matter is remanded to the trial court for additional proceedings consistent with this decision. Appellant and appellee are ordered *Page 9 
to divide the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J. JUDGE, Mark L. Pietrykowski, P.J. JUDGE, William J. Skow, J. JUDGE, CONCUR. *Page 1