[Cite as *State v. Hughley*, 2020-Ohio-4741.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

     Plaintiff-Appellee,          :

                                       No. 108771

     v.                                    :

SAMSON HUGHLEY,                            :

     Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 1, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-625169-B

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mahmoud S. Awadallah, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Defendant-appellant Samson Hughley ("appellant") brings the instant appeal challenging his convictions for aggravated murder, aggravated robbery, felonious assault, and having weapons while under disability. Appellant argues that the juvenile court erred by finding that he was not amenable to rehabilitation in the

juvenile judicial system and that the trial court erred by failing to merge allied offenses of similar import for sentencing. In addition, appellant contends that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. After a thorough review of the record and law, we affirm.

## I. Factual and Procedural History

{¶ 2} On August 28, 2017, Andre Block ("Block") was shot multiple times in the middle of Cedar Avenue and East 28th Street in Cleveland, Ohio and ultimately died from the wounds. The events leading up to and including his killing were captured by video surveillance of stores in the area. The surveillance video shows multiple individuals, including Block, loitering in and around the intersection of East 28th and Cedar Avenue. At one point, two individuals can be seen standing in front of a store, and one individual hands an item to the other individual. The second individual, later identified as appellant, subsequently crosses the street and stands behind Block. He then approaches Block and puts his arms around him. Block breaks away and appellant goes after him, raising his right arm. Block runs across the street with appellant chasing after him, arm still raised. Block collapses in the street after being shot in the back. Appellant then goes toward where Block is lying in the street, rifles through his coat, and rolls him over.

{¶ 3} The first individual is then seen running up to Block and appellant. It appears that the first individual and appellant exchange an item between themselves and then leave the scene together. A witness to the incident, Dominique Coleman, corroborated this exchange and subsequent fleeing.

{¶ 4} Officer Sean Bradley of the Cleveland Metropolitan Housing Authority Police Department responded to the scene and examined surveillance video obtained from a nearby store. Officer Bradley frequently patrolled the area of the homicide and was able to immediately recognize appellant's codefendant, Johnny Lowe ("Lowe"), as the individual handing an item, believed to be the gun, to appellant. Officer Bradley believed that the shooter was appellant but was only about 75-80 percent certain at that time. He testified that he was very familiar with appellant, because he had had multiple prior face-to-face interactions with him and had seen pictures of him on social media. When Officer Bradley later viewed additional surveillance footage, he was able to identify appellant as the shooter without any doubt.

{¶ 5} Appellant was arraigned on a complaint in juvenile court on September 20, 2017. Appellant waived probable cause to the state's discretionary bindover motion and proceeded with an amenability hearing. During the hearing, the juvenile court heard testimony from the state's witnesses: Dr. Pinsoneault, a psychologist who conducted the Juv.R. 30 evaluation of appellant; Christine Thomas, a placement aftercare coordinator at the juvenile court; and Detective Thomas Lynch, who responded to the homicide of Andre Block and testified as to the circumstances of the crime. Appellant presented the testimony of Perry Payne, the unit manager for the unit in the detention center where appellant was residing.

{¶ 6} Dr. Pinsoneault testified as to appellant's homelife, the criminal history of appellant's parents, the amount of violence appellant had witnessed, the physical

punishment he had experienced, his legal history, and his substance abuse history. Dr. Pinsoneault determined that appellant was diagnosed with ADHD, PTSD, and a conduct disorder. Dr. Pinsoneault further noted that appellant did well in his placement at Cleveland Christian Home and that he does well in a structured environment. The doctor ultimately found four positive factors supporting appellant remaining in the juvenile court and ten negative factors that weighed against keeping appellant in juvenile court.

{¶ 7} Ms. Thomas testified as to appellant's criminal history. Appellant had previously been placed at Cleveland Christian Home after his second arrest for domestic violence. Appellant was released and placed home after a few weeks, but after several additional arrests, he was again placed at Cleveland Christian Home. Ms. Thomas was assigned to supervise appellant at this time. At the hearing, she testified as to the activities and services provided to appellant during his placement at Cleveland Christian Home. She stated that he was very compliant but continued to violate the rules at Cleveland Christian Home by going AWOL on several occasions.

{¶ 8} Ms. Thomas further testified regarding appellant's release from Cleveland Christian Home in July 2017. After his discharge, appellant did not engage in the recommended services meant to continue his rehabilitation. After appellant's mother reported that he left home, Ms. Thomas attempted to place appellant on electronic monitoring. When appellant could not be found, Ms. Thomas filed for a violation of court order, and a warrant was issued for his arrest.

{¶ 9} Appellant was placed at Carrington Youth Academy, but soon absconded from that placement. A warrant was again issued for his arrest. The events leading to the instant matter occurred during this time.

{¶ 10} Detective Lynch testified that he was assigned to investigate the homicide of Andre Block. In doing so, he procured additional surveillance video from a convenience store that was in the area where the homicide occurred. The surveillance video included several different angles of the area. The state presented as an exhibit a video created by the police department that was a compilation of several different video angles.

{¶ 11} Det. Lynch testified that the video showed that both appellant and Lowe were watching Block's actions for approximately 25 minutes. Det. Lynch stated that Officer Sean Bradley was able to identify appellant as the shooter in the video and Lowe as the individual who was seen handing a gun to appellant. Officer Bradley was familiar with both appellant and Lowe from extensive prior interactions. Det. Lynch described appellant as following Block and trying to grab him. Block was able to get away at which time appellant shot him. Appellant then approached Block and rifled through his pockets. Lowe ran toward appellant and Block, and Lowe was seen being handed an item by appellant, which Det. Lynch believed was the gun.

{¶ 12} Mr. Payne, the unit manager for appellant's unit at the detention center testified that appellant was complying with services and doing well, although he had been involved in a fight while at the detention center.

{¶ 13} At the conclusion of the amenability hearing, the juvenile court judge stated that she had reviewed the factors under R.C. 2152.12, and specifically noted that the court would lose jurisdiction over appellant in five years and that she did not believe five years was enough time when dealing with a murder. The juvenile court judge found that appellant was not amenable to rehabilitation in the juvenile court and transferred the matter to the Court of Common Pleas of Cuyahoga County, General Division.

{¶ 14} On January 29, 2018, appellant and his codefendant, Lowe, were indicted. Appellant was charged with the following: aggravated murder, in violation of R.C. 2903.01(A) with firearm specification; two counts of aggravated murder, in violation of R.C. 2903.01(B); murder, in violation of R.C. 2903.02(B) with firearm specification; aggravated robbery, in violation of R.C. 2911.01(A)(1) with firearm specification; aggravated robbery, in violation of R.C. 2911.01(A)(3) with firearm specification; felonious assault, in violation of R.C. 2903.11(A)(1) with firearm specification; felonious assault, in violation of R.C. 2903.11(A)(2) with firearm specification; and having weapons while under disability, in violation of R.C. 2923.13(A)(2).

{¶ 15} Trial to the court commenced on March 18, 2019. The state presented the testimony of twelve witnesses, including appellant's codefendant, Lowe. As noted by the trial court, the value of Lowe's testimony was questionable; he gave many evasive and inconsistent answers before ultimately confirming that the surveillance video depicted himself and appellant and that the item that he and

appellant exchanged was a gun. Lowe acknowledged that he took a plea in exchange for his testimony against appellant.

{¶ 16} Appellant did not call any witnesses. At the close of the state's case, appellant's counsel moved for a Crim.R. 29 judgment of acquittal on all counts, which the court denied. Appellant renewed his motion at the close of the entire case, which was again denied. On March 22, 2019, the trial court found appellant guilty on all counts and specifications. Appellant was sentenced to an aggregate sentence of life in prison with parole eligibility after 26 years.

{¶ 17} Appellant filed the instant appeal, raising the following assignments of error for our review:

> 1. The juvenile division of the common pleas court abused its discretion and denied the juvenile appellant due process of law where it improperly relinquished jurisdiction over the charges against the juvenile appellant by finding he was not amenable to rehabilitation in the juvenile justice system.
>
> 2. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.
>
> 3. Appellant's convictions are against the manifest weight of the evidence.
>
> 4. The trial court erred by failing to merge all allied offenses of similar import and by imposing separate sentences for allied offenses which violated appellant's state and federal rights to due process and protections against double jeopardy.

## II. Law and Analysis

### A. Amenability

{¶ 18} In appellant's first assignment of error, he argues that the juvenile court abused its discretion and denied appellant due process of law where it improperly relinquished jurisdiction over the charges against appellant by finding he was not amenable to rehabilitation in the juvenile justice system.

{¶ 19} The juvenile division of the court of common pleas has exclusive original jurisdiction to hear complaints that allege a juvenile is delinquent because he committed an offense that would be a crime if committed by an adult. *State v. Fryerson*, 8th Dist. Cuyahoga No. 71683, 2000 Ohio App. LEXIS 456, 9 (Feb. 10, 2000). However, certain juvenile court cases can be transferred for criminal prosecution to the general division of the common pleas court. This transfer is also referred to as a bindover transfer to the adult court. R.C. 2152.12(A)(1). There are two types of bindover transfers: mandatory and discretionary. R.C. 2152.10. The case sub judice involves a discretionary bindover transfer.

{¶ 20} Following a hearing where the state introduces evidence showing probable cause that the child committed the alleged crimes, the child is eligible for a discretionary bindover pursuant to R.C. 2152.10(B). *See* Juv.R. 30. All children eligible for a discretionary bindover are not transferred for prosecution in the adult court. A juvenile court must first follow the procedures outlined in R.C. 2152.12 to determine if transfer is appropriate. *Johnson v. Sloan*, 154 Ohio St.3d 476, 2018-Ohio-2120, 116 N.E.3d 91, ¶ 6.

**{¶ 21}** In addition to the completion of a court-ordered investigation pursuant to R.C. 2152.12(C), the juvenile court must hold an amenability hearing and make the following determinations before transferring jurisdiction to the adult court:

(1) The child was fourteen years of age or older at the time of the act charged.

(2) There is probable cause to believe that the child committed the act charged.

(3) The child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions.

R.C. 2152.12(B); Juv.R. 30(C).

**{¶ 22}** To satisfy the third prong of R.C. 2152.12(B) and establish a child's amenability to the juvenile system, the juvenile court considers the applicable factors listed in R.C. 2152.12(D) — those factors that indicate a child's case should be transferred — with the appropriate factors identified in R.C. 2152.12(E) that weigh against the transfer of the juvenile case. The record must reflect the applicable factors considered by the juvenile court. *Id.*

**{¶ 23}** Juvenile courts have wide discretion to transfer their cases to adult courts, and on appeal, a juvenile court's decision to bind over a case is reviewed under an abuse of discretion standard. *State v. Poole*, 8th Dist. Cuyahoga No. 98153, 2012-Ohio-5739, ¶ 6. Where the juvenile court weighed the statutory factors and the record shows a rational basis for the court's findings regarding those statutory factors, an appellate court cannot conclude the trial court abused its discretion when

it transferred jurisdiction. *Id.* "'[I]f there is some rational and factual basis to support the trial court's decision, [an appellate court is] duty bound to affirm it regardless of [its] personal views of the evidence.'" *State v. Johnson*, 2015-Ohio-96, 27 N.E.3d 9, ¶ 36 (8th Dist.), quoting *State v. West*, 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285, ¶ 10 (4th Dist.).

{¶ 24} Appellant acknowledges that the first two prongs for transfer were met in this matter because appellant was fifteen years old and waived the probable cause determination. Appellant contends that the juvenile court erred in its determination of the third prong, that appellant was not amenable to rehabilitation in juvenile court.

{¶ 25} Appellant asserts that the evidence at the hearing supported a finding that appellant was actually amenable to care or rehabilitation in the juvenile system. In particular, appellant argues that the court did not appear to give any weight to the testimony of Dr. Pinsoneault regarding the factors that weighed in favor of retaining jurisdiction. Dr. Pinsoneault testified that appellant does well in the structured environments provided by the juvenile justice system. He further stated that appellant's young age provided time for rehabilitation; appellant did well during his placement at Cleveland Christian Home; appellant made progress in his behavior and relationship with his mother; appellant did well in school while he was in a structured environment; and appellant was doing well in the detention center.

{¶ 26} Appellant further contends that the court's order did not give sufficient, if any, weight to appellant's family issues and the fact that he was not emotionally, physically, or psychologically mature enough for the transfer.

{¶ 27} The state argues that the trial court's judgment entry clearly shows that it considered all of the factors in R.C. 2152.12(D) and (E) and made specific findings relative to each factor that favored a transfer and those that were against a transfer. We agree.

{¶ 28} In its judgment entry of January 17, 2018, the juvenile court found that appellant was not amenable to rehabilitation in the juvenile judicial system and specifically indicated how each of the factors in R.C. 2152.12(D) and (E) applied to the instant matter as follows:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

*The court found that the victim was shot in the back and subsequently died from the wound.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

*The court found this factor was not applicable.

(3) The child's relationship with the victim facilitated the act charged.

*The court found this factor was not applicable.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

*The court found there was no evidence that the act committed was part of a gang.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

> *The court found that appellant was in possession of a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

> *The court found that appellant had a delinquent history and had been placed at Cleveland Christian Home where he was discharged successfully.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

> *The court found that it was "clear that [appellant] did not benefit from any programs in Juvenile Court."

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

> *The court found that Dr. Pinsoneault reported that appellant had the ability to logically think with an intelligence quotient that was just below average.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

> *The court found that appellant was fifteen years old, which left over five years in the system; however, the murder was egregious, and appellant had not availed himself of rehabilitation services.

{¶ 29} Additionally, the court made the following findings under R.C. 2152.12(E):

(1) The victim induced or facilitated the act charged.

> *The court found that this factor was inapplicable.

(2) The child acted under provocation in allegedly committing the act charged.

> *The court found that this factor was inapplicable.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

> *The court found that appellant was the principal actor, although a co-defendant was also charged.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

> *The court found that appellant pointed a firearm during the afternoon, fired into the back of the victim, and proceeded to rummage through the pockets of the victim.

(5) The child previously has not been adjudicated a delinquent child.

> *The court found that appellant had not been previously charged.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

> *The court found that appellant was intelligent and emotionally on track for his age, but that he was not sufficiently mature for transfer at 15 years and 11 months of age.

(7) The child has a mental illness or is a mentally retarded person.

*The court found that appellant had been diagnosed with PTSD, ADHD, opioid and marijuana abuses, and conduct disorder.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

*The court found that, based on appellant's crimogenic history, it was unlikely that he would be rehabilitated.

{¶ 30} Consideration of the R.C. 2152.12(D) and (E) factors reflects the court's evaluation of how a juvenile will manage within the adult system. *State v. Crosby*, 8th Dist. Cuyahoga Nos. 107392 and 107551, 2019-Ohio-2217, ¶ 51. In addition, the severity of a crime can be a strong indicator that there remains insufficient time to rehabilitate a child offender in the juvenile justice system. *Johnson*, 2015-Ohio-96, 27 N.E.3d 9, at ¶ 43; *see also State v. Amos*, 1st Dist. Hamilton No. C-150265, 2016-Ohio-1319, ¶ 43 (a juvenile court can consider the number and nature of the committed offenses when determining if the child is amenable to the juvenile justice system). The Supreme Court of Ohio has found juveniles who committed a major felony may require additional time for rehabilitation in comparison to juveniles who commit less serious offenses, and therefore, are less amenable to the juvenile system. *Johnson* at ¶ 43. In this case, the juvenile court specifically found that the five years left until it would lose jurisdiction over appellant were not sufficient for rehabilitation.

{¶ 31} Despite the fact that Dr. Pinsoneault's psychological report lists factors indicating appellant's responsiveness to rehabilitation in the juvenile justice system,

"the trial court is still the ultimate trier of fact and free to disagree with the psychologist's recommendation." *Johnson* at ¶ 42; *see also State v. McCutchen*, 8th Dist. Cuyahoga Nos. 102381, 102382, and 102383, 2016-Ohio-488, ¶ 32. In the instant matter, Dr. Pinsoneault ultimately did not make a recommendation for or against transfer.

{¶ 32} In accordance with R.C. 2152.12, the juvenile court applied the statutory considerations and determined that the factors in R.C. 2152.12(D) — in support of retaining jurisdiction in the juvenile system — were outweighed by R.C. 2152.12(E)'s factors that endorse transfer to the adult court. We do not find the juvenile court's decision to grant a discretionary transfer was an abuse of discretion. Thus, appellant's first assignment of error is overruled.

## B. Sufficiency of the Evidence

{¶ 33} In his second assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29 motions because his convictions were not supported by sufficient evidence.

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 101, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

> The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

*Cleveland v. Battles*, 8th Dist. Cuyahoga No. 104984, 2018-Ohio-267, ¶ 11-12.

{¶ 34} First, appellant contends that the state failed to prove that appellant caused the death of Block purposely and with prior calculation and design. Appellant argues that (1) there is no evidence that appellant knew Block or that they had any type of strained relationship; (2) it is unlikely that appellant chose the location in the middle of a busy intersection at mid-day for the purpose of committing a murder; and (3) the video demonstrated that appellant and Block's interaction did not occur by plan, but was a spontaneous eruption of events.

{¶ 35} The state asserts that the video, in fact, did demonstrate Lowe handing appellant an item from Lowe's waistband and further showed appellant following Block and positioning himself catty-cornered to him. Appellant then followed him across the street, waited for a bit, then grabbed Block and shot him as he attempted to get away from appellant. The state therefore argues that there was sufficient evidence to demonstrate prior calculation and design beyond a reasonable doubt.

{¶ 36} "'Prior calculation and design' has been defined by Ohio courts as 'the presence of sufficient time and opportunity for the planning of an act of homicide.'" *State v. Williams*, 8th Dist. Cuyahoga No. 82364, 2003-Ohio-6342, ¶ 36, quoting *State v. Cotton*, 56 Ohio St.2d 8, 381 N.E.2d 190 (1978), paragraph three of the syllabus. "The finding of prior calculation and design turns upon the particular facts and evidence presented at trial and must be determined on a case-by-case basis." *Williams* at *id.*, citing *State v. Taylor*, 78 Ohio St.3d 15, 676 N.E.2d 82 (1997).

{¶ 37} Three inquiries may assist in determining whether prior calculation and design exist: (1) Did the accused and the victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or the murder site? (3) Was the act drawn out or an "almost instantaneous eruption of events?" *Id.*, citing *State v. Jenkins*, 48 Ohio App.2d 99, 355 N.E.2d 825 (8th Dist.1976); *see State v. Braden* 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439.

{¶ 38} The phrase "prior calculation and design" has been interpreted by the Supreme Court of Ohio "to require evidence of 'more than [a] few moments of deliberation'" and "'a scheme designed to implement the calculated decision to kill.'" *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 38, quoting *Cotton* at 11. In other words, "[i]nstantaneous deliberation is not sufficient to constitute 'prior calculation and design.'" *Cotton* at paragraph two of the syllabus. "'[N]either the degree of care nor the length of time the offender takes to ponder the crime beforehand'" is a "'critical factor'" in and of itself so long as it amounts to more than "'momentary deliberation.'" *State v. D'Ambrosio*, 67 Ohio St.3d 185, 196, 616 N.E.2d 909 (1993), quoting 1973 Legislative Service Commission Comment to R.C. 2903.01. Although "'momentary deliberation' is insufficient," *D'Ambrosio* at 196, "prior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes." *State v. Coley*, 93 Ohio St.3d 253, 264, 754 N.E.2d 1129 (2001).

{¶ 39} In this case, considering these factors along with the totality of the circumstances surrounding Block's murder, we find that, after construing the evidence presented at trial (including all reasonable inferences that could be drawn from that evidence) in the light most favorable to the state, there was sufficient evidence to establish beyond a reasonable doubt that appellant acted with prior calculation and design in murdering Block. This was not a sudden eruption of events, but rather a precalculated drawn out event where appellant and Lowe were watching Block for approximately 25 minutes, and appellant was seen moving closer to Block before walking up, grabbing him, then shooting him when Block tried to get away.

{¶ 40} Appellant next argues that there was insufficient evidence to support a conviction against him for purposely causing the death of Block while committing or attempting to commit or while fleeing immediately after committing aggravated robbery or kidnapping, as charged in Counts 5, 6, 8, and 9. Appellant contends that there was no evidence that he was trying to take anything from Block or that he was restraining Block's liberty in any way.

{¶ 41} The state argues that the video shows appellant going through Block's pockets after he shot Block, which shows that appellant killed Block while attempting to commit aggravated robbery. The state further asserts that appellant restrained Block's liberty, thereby committing the offense of kidnapping, in the commission of aggravated murder, aggravated robbery, and having weapons while under a disability.

{¶ 42} After construing the evidence presented at trial (including all reasonable inferences that could be drawn from that evidence) in the light most favorable to the state, there was sufficient evidence to establish beyond a reasonable doubt that appellant killed Block while attempting to commit kidnapping.

{¶ 43} Finally, appellant argues that there was insufficient evidence that appellant (1) caused the death of Block as a proximate result of committing or attempting to commit felonious assault; (2) knowingly caused serious physical harm to Block; (3) knowingly caused or attempted to cause physical harm to Block by means of a dangerous ordnance; and (4) knowingly acquired, had, carried, or used a firearm on August 29, 2017.

{¶ 44} The state again cites the surveillance video as showing that appellant walked toward Block and shot him, thus causing serious physical harm. Officer Bradley testified that he was certain that the shooter was appellant.

{¶ 45} We find that the record reflects, as outlined above, that there was sufficient evidence to show that appellant caused Block's death while committing felonious assault and knowingly caused serious physical harm to Block by using a handgun.

{¶ 46} Because we have determined that there was sufficient evidence to support all of appellant's convictions, appellant's second assignment of error is overruled.

## C. Manifest Weight of the Evidence

{¶ 47} In his third assignment of error, appellant argues that his convictions were against the manifest weight of the evidence.

{¶ 48} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 47, quoting *Thompkins* at 387.

{¶ 49} In our manifest weight review of a bench trial verdict, we recognize that the trial court is serving as the factfinder, and not a jury:

> "Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered."

*State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.), quoting *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441,

863 N.E.2d 1125 (8th Dist.), citing *Thompkins* at 390. *See also State v. Kessler*, 8th Dist. Cuyahoga No. 93340, 2010-Ohio-2094, ¶ 13.

{¶ 50} Appellant argues that the quality of the evidence against him was poor and unreliable. First, he contends that no weight should be given to the untrustworthy testimony of codefendant Lowe. In addition, appellant maintains that the surveillance video is grainy, and Officer Bradley expressed some doubt as to whether it was definitively appellant. Moreover, appellant argues that there was no DNA evidence, the firearm utilized in the crime was never recovered, and the state did not demonstrate that appellant had any intention or reason to kill Block.

{¶ 51} In response, the state asserts that the surveillance video, while from a distant shot, was not "grainy" as appellant describes. The video depicts multiple angles where appellant and Lowe were definitively identified by Officer Bradley. The state maintains that the video shows appellant approach and attempt to grab Block, shoot Block after he tried to get away, and then go through his pockets after he was shot down. Furthermore, the state presented appellant's jail phone calls, which included a call from appellant's father, where he stated, "You're on video. You could see them hand you a gun." Finally, the state argues that it was not required to demonstrate motive as an element of the murder charges.

{¶ 52} Upon a thorough review of the record, we cannot find that appellant's convictions were against the manifest weight of the evidence. Officer Bradley was unequivocal in his testimony identifying appellant as the shooter and his codefendant as Lowe, who handed appellant the gun. The video showed appellant's

actions in watching, approaching, and shooting Block, and subsequently going through his pockets. Further, the state presented the testimony of Tom Ciula, a forensic video specialist with the Cleveland Police Department, who compiled the surveillance video that was played during appellant's trial. While the video played, Mr. Ciula narrated what was occurring and how both appellant and Lowe could be identified throughout.

{¶ 53} While we agree that the testimony of Lowe was dubious given his contradictory and evasive answers, there was still enough evidence to support appellant's convictions. We therefore cannot say that the trial court lost its way and created a manifest miscarriage of justice. Accordingly, appellant's third assignment of error is overruled.

## D. Merger of Allied Offenses

{¶ 54} In his fourth assignment of error, appellant argues that the court erred by failing to merge the offenses of aggravated murder and aggravated robbery.

{¶ 55} R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, prohibiting multiple punishments for the same offense, and states as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses

of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 56} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Supreme Court of Ohio identified the proper analysis in determining whether the offenses merge or whether the defendant may be convicted of separate offenses under R.C. 2941.25(B):

> A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance — in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

{¶ 57} At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. Accordingly, two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the harm that results from each offense is separate and identifiable.

{¶ 58} Appellant contends that the offenses committed were the result of a single act and animus. Appellant therefore argues that the aggravated robbery and aggravated murder charges should have merged and that the firearm specifications should also have merged for the same reason. Appellant's minimum sentence would have been reduced from 26 years to life to 23 years to life.

{¶ 59} In response, the state argues that the two offenses do not correspond to such a degree that the commission of one offense will result in the commission of the other. Therefore, the state asserts that the trial court properly did not merge the aggravated murder and aggravated robbery charges for purposes of sentencing.

{¶ 60} In addition, the state maintains that the firearm specifications for all counts should not merge under R.C. 2929.14(B)(1)(g). This statute provides that when an offender is convicted of two or more felonies that included aggravated murder and aggravated robbery, the court shall impose on the offender two of the most serious specifications. The state cites *State v. Nelson*, 2017-Ohio-5568, 93 N.E.3d 472 (8th Dist.), where this court held that R.C. 2929.14(B)(1)(g) allows for multiple consecutive firearm specifications to be imposed for a single incident.

{¶ 61} With respect to the merger of offenses for purpose of sentencing, an appellate court applies a de novo standard of review when reviewing whether two offenses are allied offenses of similar import. *State v. Boczek,* 8th Dist. Cuyahoga No. 103811, 2016-Ohio-5708, ¶ 4.

{¶ 62} With regard to appellant's claim that the aggravated murder and aggravated robbery counts should have merged, we note that the Supreme Court of

Ohio has held that these two offenses are not allied offenses of similar import. *State v. Coley,* 93 Ohio St.3d 253, 265, 754 N.E.2d 1129 (2001); *State v. Bickerstaff,* 10 Ohio St.3d 62, 66, 461 N.E.2d 892 (1984).

{¶ 63} "'[A]ggravated murder, as defined in R.C. 2903.01, is not an allied offense of similar import to aggravated robbery, as defined in R.C. 2911.01, for purposes of R.C. 2941.25(A).'" *State v. Humphrey*, 8th Dist. Cuyahoga No. 89476, 2008-Ohio-685, ¶ 40, quoting *Bickerstaff* at syllabus. As stated by the Supreme Court of Ohio, "[c]learly, the crimes and their elements do not correspond to such a degree that commission of one offense constitutes commission of the other, nor is the commission of one merely incidental to the other." *Bickerstaff* at 66.

{¶ 64} Thus, the trial judge acted within the sentencing authority of R.C. 2941.25(B) when he sentenced appellant separately on the convictions for aggravated robbery and aggravated murder.

{¶ 65} Further, appellant's assertion that the firearm specifications should merge is not well taken. Pursuant to R.C. 2929.14(B)(1)(g), when an offender is convicted of two or more felonies that include aggravated murder and aggravated robbery, the court shall impose on the offender two of the most serious specifications. Moreover, this court has previously acknowledged that R.C. 2929.14(B)(1)(g) "allow[s] for multiple, consecutive firearm specifications to be imposed for a single incident." *See, e.g., State v. Lawrence*, 8th Dist. Cuyahoga Nos. 100371 and 100387, 2014-Ohio-4797, ¶ 12-16.

{¶ 66} Appellant's fourth assignment of error is overruled.

## III. Conclusion

{¶ 67} After thoroughly reviewing the record, we affirm appellant's convictions. The juvenile court properly considered the factors under R.C. 2152.12(D) and (E) in determining that appellant was not amenable to rehabilitation in the juvenile justice system. Further, appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. Finally, the trial court correctly refused to merge appellant's convictions for aggravated murder and aggravated robbery because they were not allied offenses of similar import, and the court was permitted to impose multiple firearm specifications for a single incident.

{¶ 68} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., JUDGE

ANITA LASTER MAYS, P.J., CONCURS;
LARRY A. JONES, SR., J., DISSENTS WITH SEPARATE OPINION

LARRY A. JONES, SR., J., DISSENTING:

{¶ 69} The child in this case was alleged to have committed the most heinous crime imaginable — murder. He is, however, a child, only 15 years old at the time of his acts. And now he has been sentenced to life in prison with parole eligibility after 26 years. I dissent because I believe that he was amenable to rehabilitation in the juvenile justice system and the trial court abused its discretion in granting a discretionary bindover.

{¶ 70} R.C. 2152.01 outlines the overarching principles a juvenile court should keep in mind when rendering its dispositions. The statute provides in relevant part as follows:

> (A) *The overriding purposes for dispositions under this chapter are to provide for the care, protection, and mental and physical development of children subject to this chapter*, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender. These purposes shall be achieved by a system of graduated sanctions and services.
>
> (B) Dispositions under this chapter shall be reasonably calculated to achieve the overriding purposes set forth in this section, commensurate with and not demeaning to the seriousness of the delinquent child's or

the juvenile traffic offender's conduct and its impact on the victim, and consistent with dispositions for similar acts committed by similar delinquent children and juvenile traffic offenders. The court shall not base the disposition on the race, ethnic background, gender, or religion of the delinquent child or juvenile traffic offender.

(Emphasis added.) R.C. 2152.01(A) and (B).

{¶ 71} I disagree that the juvenile court's bindover in this case achieved the above-stated purposes.

{¶ 72} Both Dr. Pinsoneault and Hughley's placement aftercare coordinator, Christine Thomas, testified that he did well when in the structured environments provided by the juvenile justice system; it was only when he was released into the community that problems occurred. One could argue that this is evidence that he belongs imprisoned for life, but I disagree.

{¶ 73} Dr. Pinsoneault found numerous factors that were positive indicators that Hughley should remain in juvenile custody including: (1) his young age, which gives him time to be rehabilitated; (2) he did well when placed at Cleveland Christian Home; (3) he has made progress in behavior and his relationship with his mother; (3) he did well in school while in a structured environment; and (4) he was doing well in the detention center.

{¶ 74} While the doctor noted several negative factors as well, the doctor admitted some of the negative factors could be grouped together, i.e., the first four negative factors dealt with behavior. The doctor also noted that there is a significant difference between how Hughley acted when he was in a structured setting and how he acted in the community. The doctor discussed Hughley's chaotic home

environment, his parents' history of incarceration, his substance abuse issues, and that Hughley had been a victim of, and witness to, significant violence throughout his young life.

{¶ 75} Thomas testified that Hughley completed his programming and treatment goals while placed at Cleveland Christian Home and was successful with service in a structured environment. She further testified that Hughley got "great" grades, "A's and B's."  But when he was released from Cleveland Christian Home, "they [Cleveland Christian Home] did not address the family issues as we expected them to" and did not "prepare for his discharge successfully."

{¶ 76} At the time of the amenability hearing, Hughley had five years to be rehabilitated in the juvenile justice system — that, in my opinion, is a significant period of time.  Because this was a discretionary bindover, the juvenile court was able to look at Hughley as a whole, and not just the crimes and his age as would be the case in a mandatory bindover.  I believe that

> [t]he juvenile justice system should look for reform that "aims to enable juveniles to make a successful, prosocial transition to adulthood, while holding them accountable for their wrongdoing, treating them fairly, and protecting society from further offending."

*State v. Kimbrough*, 8th Dist. Cuyahoga Nos. 108172 and 108173, 2020-Ohio-3175, ¶ 140 (Jones, J., dissenting), quoting Morris, 47 Cap. U.L. Rev. at 669, quoting *National Research Council, Reforming Juvenile Justice:  A Developmental Approach* 89 (2013).

{¶ 77} I do not believe the juvenile court looked at Hughley as a whole, with his "care, protection, and mental and physical development" in mind, with the purpose of protecting the "public interest and safety," while holding him "accountable for [his] actions" and restoring and rehabilitating him. R.C. 2152.01(A). Thus, I believe the juvenile court abused its discretion in transferring Hughley to the adult system.

{¶ 78} I therefore dissent.