[Cite as *State v. Toby*, 2018-Ohio-3369.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 106306

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**STEVEN TOBY**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-615862-A

**BEFORE:** Blackmon, J., E.T. Gallagher, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** August 23, 2018

**ATTORNEYS FOR APPELLANT**

J. Charles Ruiz-Bueno
36130 Ridge Road
Willoughby, Ohio 44094

Francis A. Gorczyca
55 Public Square, Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Kevin R. Filiatraut
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1}   Appellant Steven Toby ("Toby") appeals from his convictions for gross sexual imposition, attempted rape, and aggravated burglary.   He assigns the following error for our review:

The evidence adduced at trial was insufficient to sustain a verdict against [Toby].

{¶2} Having reviewed the record and pertinent law, we affirm.   The apposite facts follow.

{¶3}   Toby was indicted for two counts of rape, attempted rape, aggravated burglary, and kidnapping, along with notice of prior conviction and repeat violent offender specifications (alleging a prior aggravated robbery), in connection with an attack upon A.B. in her apartment in November 2016.   Toby pled not guilty, and the matter proceeded to trial to the court.

{¶4}   A.B. testified that while she was decorating her Christmas tree, someone knocked on the door to her apartment and said that he was "Brock," one of her neighbors.   She opened the door slightly, and Toby, an individual she had seen around her building and who she knew as "Face," pushed his way inside.

{¶5}   A.B. stated that after pushing his way inside, Toby slammed her against the wall by her hair and locked the door.   He yanked her by the hair over to the sofa, ripping out hair extensions that had been glued to her scalp.   He was   very upset and sweating, and said that he needed to talk to someone about his son who was "dead in a garbage bag."   A.B. began to cry and told Toby that she feared that this would be the last day that she would ever see her family.   Toby removed A.B.'s sweat pants and performed oral sex upon her.   A.B. asked Toby if she could get her cigarettes from the dining room.   When he agreed, she grabbed her Mace from the dining room table and attempted to flee to the bedroom.   According to A.B.'s testimony, she

sprayed the Mace, but Toby overpowered her, threw her to the bedroom floor and raped her. A.B. continued to struggle, sustaining scratches, abrasions, and bruises.

{¶6} A.B. eventually fled to her neighbor's apartment for help. Her young son followed behind her. Toby locked himself in the apartment, then fled. A.B. later observed that a window leading to the fire escape and a nearby alley had been left open. She stated that several weeks prior to the attack, Toby had climbed the fire escape and appeared at her dining room window. He offered to pay her if she would permit him to sleep at her apartment, but she refused.

{¶7} A.B. was transported to MetroHealth where a S.A.N.E. nurse completed a rape examination and rape kit evidence collection. Photographs depicting abrasions and scrapes to A.B.'s face and bruises to her arms were admitted into evidence. A.B. also spoke with police, and informed them that "Blessed" was tattooed on Toby's neck, and that his jacket and hat were left behind in her apartment. A.B. identified Toby from a photo array. She admitted that she initially told police that Toby had a weapon, and also described the assailant as 5'11" which is taller than Toby. She did not immediately inform police that Toby had been in her apartment on a previous occasion. After that incident, she was uncomfortable around him and attempted to avoid him.

{¶8} Roseann Bunjevac ("Bunjevac") testified that A.B. is her neighbor and they live in a building near a Pearl Road bar. One night while Bunjevac was getting ready to go to work, A.B. began pounding on her door, and frantically screaming for her. According to Bunjevac, A.B. was naked from the waist down and was crying. She was disheveled, with portions of hair missing from her head, and she said that she had been raped. Bunjevac asked where A.B.'s young son was and A.B. said that he was still in the apartment. Bunjevac called the police, and a few neighbors gathered in response to A.B.'s calls for help. They returned to her apartment,

but the door was locked so they forced it open. Bunjevac noticed clothing and clumps of hair on the floor. A window leading to a fire escape was open.

{¶9} Scott Russell ("Russell") testified that he visited Bunjevac on the date of the incident. On his way inside, he observed a man in the stairwell. About 45 minutes later, A.B. came to the apartment, followed by her son. A.B. was wearing only a T-shirt and was screaming that she had been raped. Russell went over to A.B.'s apartment but the door was locked from the inside. Russell and another neighbor forced the door open. They later determined that a cell phone had been left in the apartment, but A.B.'s phone was missing.

{¶10} Brittney Davis ("Davis"), Toby's former girlfriend, testified that Toby's nickname is "Face." She identified Toby as the person depicted in photographs and video from inside and outside a bar located near A.B.'s apartment. Davis also identified a hat, jacket, and cell phone as belonging to Toby. However, Davis acknowledged that the hat she identified is lighter than the hat that Toby wears, and that the last call made from the cell phone was four days prior to the date of the attack. Davis testified that after she responded to questions from the police, she received a letter from Toby that accused her of being a "snitch."

{¶11} Cleveland Police Officer Barbara Johnson ("Officer Johnson") arrived within minutes of the 911 call. Her body camera recorded A.B. dressed only in a T-shirt and screaming about being attacked. Her young son followed after her, carrying blond hair extensions. Officer Johnson observed Mace and cigarettes, and that a window leading to a fire escape was open. After exiting the apartment due to the effects of the Mace spray, Officer Johnson observed a cell phone was on the bannister and a jacket on the floor in the hall. Additionally, Officer Johnson received information from another neighbor regarding a report of a man jumping out of a window at the apartment building.

**{¶12}** Detective Walter Emerick ("Det. Emerick") photographed the apartment, secured the evidence, and dusted the window leading to the fire escape for fingerprints. He observed a palm print but could not lift any readable fingerprints. He admitted on cross-examination that he did not observe any damage to the door. Detective Richard Tusing ("Det. Tusing") photographed A.B.'s injuries and prepared a photo array that included individuals with neck tattoos. A.B. told the detective that she was not sure if the man she knew from the apartment was the assailant, but she identified Toby from a photo array with certainty. Det. Tusing also obtained surveillance video from the nearby bar from the evening of the attack. It depicted Toby sitting inside the bar, exiting through the rear door, climbing over garbage near the back of A.B.'s building, then going up the fire escape. Later, a person jumped out of a window to the fire escape and ran from the building.

**{¶13}** Cuyahoga County Forensic DNA Analyst Laura Evans ("Analyst Evans") testified that she analyzed evidence from the rape kit. A vaginal swab yielded a presumptive positive test for seminal fluid, but this result could not be confirmed with additional tests. No blood was obtained from A.B.'s fingernail scrapings, testing for saliva was inconclusive, and no DNA evidence was obtained.

**{¶14}** Analyst Evans also examined the other evidence collected at the scene and determined that the wrist area of the jacket contained a mixture of DNA. The major profile, or largest amount, was consistent with Toby's DNA. The expected frequency of this profile was one in approximately 122 nonillion for Caucasian people, one in 307 octillion for African-American individuals, and one in 9.95 nonillion for Hispanic individuals. The minor profile was consistent with A.B.'s DNA. The expected frequency of this profile was one in approximately 110,000 for Caucasian people, one in 673,000 for African-American individuals, and one in

110,000 for Hispanic individuals. The hat contained a mixture of DNA. One of the profiles was consistent with Toby's DNA. The expected frequency of this profile was one in approximately 153 nonillion for Caucasian people, one in 396 octillion for African-American individuals, and one in 11.4 nonillion for Hispanic individuals. There were other contributors to the sample but it was inconclusive as to A.B.'s profile. Scrapings from A.B.'s fingernails contained a mixture from her and one unknown contributor, but were not linked to Toby.

{¶15} The defense emphasized that there were no fingerprints or DNA evidence from the rape kit, and other discrepancies regarding the assailant's height, clothing, and the lack of damage to the apartment door.

{¶16} The trial court acquitted Toby of one of the rape charges and the kidnapping charge, but convicted him of gross sexual imposition (as a lesser included offense of the second rape count), attempted rape, and aggravated burglary, and the notice of prior conviction and repeat violent offender specifications. The court sentenced Toby to a total of four years of imprisonment and five years of postrelease control.

## Sufficiency of the Evidence

{¶17} In the sole assigned error, Toby argues that there is insufficient evidence linking him to the offenses.

{¶18} The question of whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. It is "an inquiry about due process, * * * the resolution of which does not allow the court to weigh the evidence." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime proven beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶19} A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the prosecution has met its burden of production at trial. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, ¶ 13; *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, ¶ 16.

{¶20} In this case, the key question is the identity of A.B.'s assailant. A.B. testified that she knew Toby as "Face," and that he forced his way into the apartment and then sexually assaulted her. She identified Toby as her attacker with 100 percent certainty. Although Toby complains that A.B. was not a credible witness, the test for sufficiency is not whether the state's evidence is to be believed, but whether, if believed, the evidence would support a conviction. *State v. Woods*, 8th Dist. Cuyahoga No. 82789, 2004-Ohio-2700, ¶ 63. Eyewitness testimony from a victim has been deemed sufficient evidence supporting a conviction. *State v. Lennon*, 8th Dist. Cuyahoga No. 104344, 2017-Ohio-2753, ¶ 93. Similarly, eyewitness testimony from a victim who met the assailant prior to the attack has been deemed sufficient. *State v. Nickleberry*, 8th Dist. Cuyahoga No. 77516, 2000 Ohio App. LEXIS 5497 (Nov. 22, 2000).

{¶21} Additionally, circumstantial evidence may be sufficient to establish the identity of the accused. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75; *State v. Kiley*, 8th Dist. Cuyahoga Nos. 86726 and 86727, 2006-Ohio-2469, ¶ 10; *Cleveland v. Williams*, 8th Dist. Cuyahoga No. 101588, 2015-Ohio-1739, ¶ 25. Here, in addition to the eyewitness testimony from A.B., the state presented testimony from her neighbors that she fled the apartment naked from the waist down and screaming about being assaulted. She was

disheveled and had scratches, bruises, and abrasions, and her hair extensions had been pulled out.

In responding to the scene, Officer Johnson detected the odor of Mace, and it is undisputed that Toby's belongings were discovered in the building. A mixture of DNA profiles consistent with those belonging to Toby and A.B. was found on Toby's jacket, and his phone was left in the apartment. Toby also sent a letter to his former girlfriend describing her as a "snitch," after she identified him as the person depicted on video surveillance from a nearby bar at around the time of the assault. The evidence, if believed, was sufficient to demonstrate that Toby was A.B.'s assailant and that he committed the offenses of gross sexual imposition, attempted rape, and aggravated burglary.

**{¶22}** The assigned error lacks merit.

**{¶23}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

___

PATRICIA ANN BLACKMON, JUDGE

EILEEN T. GALLAGHER, P.J., and
MARY J. BOYLE, J., CONCUR

.