[Cite as *State v. Ogletree*, 2025-Ohio-371.]

COURT OF APPEALS OF OHIO

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 113913 |
| v. | : | |
| ANTONIO OGLETREE, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 6, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-686904-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brittany Stipich, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant*.

WILLIAM A. KLATT, J.:

{¶ 1} Defendant-appellant Antonio Ogletree ("Ogletree"), appeals his conviction. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} On November 29, 2023, Ogletree was indicted on five counts based upon acts that allegedly occurred between Ogletree and his girlfriend, M.C., on November 16, 2023: aggravated burglary in violation of R.C. 2911.11(A)(1), felonious assault in violation of R.C. 2903.11(A)(1), felonious assault in violation of R.C. 2903.11(A)(2), and two counts of strangulation in violation of R.C. 2903.18(B)(2). The burglary and felonious assault charges included notice-of-prior-conviction and repeat-violent-offender specifications. Ogletree pleaded not guilty to all charges on December 4, 2023.

{¶ 3} On March 12, 2024, Ogletree voluntarily waived his right to a jury trial, and the case proceeded to a bench trial. The trial court heard testimony from M.C. and Officer Brittany Vajusi ("Officer Vajusi"); Ogletree did not provide any testimony on his own behalf.

{¶ 4} M.C. testified that on the day in question, she and Ogletree lived together in her apartment. M.C. picked up Ogletree from work around 5:30 p.m., and they returned home. At the apartment, M.C. informed Ogletree that due to information she found on his phone four days previously, she did not believe their relationship was going to work. M.C. told Ogletree "he could stay but he wasn't going to like [her] if he did stay. And [she] didn't want to be with him or whatever." Tr. 12. According to M.C., following her conversation with Ogletree, she was lying on the couch when Ogletree jumped on top of her, grabbed her phone, slammed it on

the floor, and left the apartment. M.C. stated she was not injured during that encounter.

{¶ 5} M.C. testified that she wanted Ogletree to pay for her broken phone so she "kind of went after him." Tr. 14. M.C. followed Ogletree in her car, persuaded Ogletree to enter her car, and as they headed back to her apartment, Ogletree exited the vehicle. M.C. stated she thought to herself that she should leave Ogletree alone before he hurt her and, therefore, she parked in a nearby parking lot for 30-60 minutes before returning to her apartment.

{¶ 6} Upon returning home, M.C. found Ogletree naked on the edge of the upstairs bathtub. M.C. stated that Ogletree must have climbed in through the window because he did not have a key to the apartment and she had locked the door when she left the apartment. M.C. further stated that Ogletree moved to the upstairs bedroom and laid down on the bed while M.C. informed him that she wanted him to leave. M.C. kicked the bed, Ogletree stood up, and M.C. found herself seated on the bed. M.C. testified that Ogletree used his hands to try and choke her, causing her to gasp for air, and he pulled on her leg.

{¶ 7} According to M.C., Ogletree eventually walked downstairs and sat on the couch, and M.C. followed him but remained standing on the stairs. M.C. stated that in response to her comments, Ogletree jumped up from the couch and started choking her a second time. M.C. said she stabbed Ogletree with scissors, and Ogletree then stabbed M.C. in the face. M.C. did not know whether Ogletree used her scissors or another object to cut her face: "And [Ogletree], I don't know, he took

something out of his pockets, took it out of my hand, but he stabbed me on my face." Tr. 21. M.C. could not identify the object used to cut her face but she stated she required six stitches and the hospital supposedly told her that she had "a three-centimeter brain aneurism blood clot, something in [her] head." Tr. 21. Per M.C., after Ogletree cut her face, he returned to the couch and said "Now you got a reason to not f--k with me no more" and told M.C. that the maintenance man would find her in the apartment. M.C. interpreted those comments as a threat to kill her.

{¶ 8} Per M.C., Ogletree then left the apartment on foot and headed to his sister's house on Capers Avenue. M.C. drove to Ogletree's sister's house where she arrived before Ogletree. M.C. testified that she saw Ogletree walking up the street and she attempted to strike him with a snow brush but Ogletree pushed her to the ground with such force that she tore a ligament in her pelvis. M.C. stated that Ogletree then entered his sister's house and locked the door. M.C. encountered security for the apartment complex who contacted the police and EMS who responded to the scene. M.C. further stated that Ogletree was intoxicated during the events in question.

{¶ 9} The security camera recording, which depicts the events outside of the Capers Avenue apartment, was played at trial. The recording shows M.C. throwing items from her vehicle's trunk — fishing rods and a grill — and smashing them on the ground. Ogletree then approached M.C., and M.C. attempted to strike Ogletree with a snow brush. Ogletree initially walked away, and he then approached

M.C. and threw her to the pavement before he entered the Capers Avenue apartment.

{¶ 10} Officer Vajusi, a five-year veteran patrol officer with the Cleveland Division of Police, testified that on November 16, 2023, she and her partner responded to a call that a woman had been stabbed and the suspect was still on the scene at Capers Avenue. Upon arrival at Capers Avenue, Officer Vajusi said she observed M.C. in a highly emotional state directing the police to an apartment where the male who allegedly assaulted her was staying. Officer Vajusi described M.C. as having a lot of blood on her face and clothing and a "pretty severe injury to her left temple" that required stitches. Tr. 41. Officer Vajusi further stated that M.C. informed her that Ogletree caused the head injury while they were at her apartment and a second incident occurred at the Capers Avenue site.

{¶ 11} Officer Vajusi testified that upon entry into the Capers Avenue apartment, the police found Ogletree who denied committing any offense and asked the police to view the security camera's surveillance footage.

{¶ 12} Officer Vajusi wore a body camera during her interactions with M.C. and Ogletree, and the recording was introduced at trial. In the recording, M.C. stated that Ogletree carried knives and screwdrivers but not guns and he "stabbed her with something." M.C. described to Officer Vajusi the events that allegedly occurred at her apartment and in the street outside Capers Avenue just as she testified to at trial.

{¶ 13} At the close of the State's evidence, Ogletree presented a Crim.R. 29 motion, and the trial court granted the motion on aggravated burglary and denied it in regard to all remaining counts. Following trial, the court found Ogletree guilty of Counts 2 and 3, felonious assault — with notice-of-prior-conviction and repeat-violent-offender specifications — and not guilty of strangulation. The court referred Ogletree for a presentence-investigation report.

{¶ 14} On April 9, 2024, the trial court heard from counsel for both parties. Defense counsel asked the court to consider that M.C. followed Ogletree even after he disengaged from the altercation and it was her acts that kept the "ongoing complication going." Defense counsel further attempted to minimize M.C.'s injuries: "[M.C.'s] injuries were, although meeting the burden for felonious assault, were — did not require extensive medical care and in the form of the laceration." Tr. 64. The court sentenced Ogletree to three to four and one-half years of imprisonment on Count 2 and three years on Count 3, with the sentences to be served concurrently.

{¶ 15} On May 9, 2024, Ogletree filed a timely notice of appeal presenting two assignments of error:

> Assignment of Error I: There was insufficient evidence produced at trial to support a finding of guilty on all counts in violation of appellant's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution as well as Article 1 of the Ohio Constitution.
>
> Assignment of Error II: The court lost its way by finding the defendant guilty against the manifest weight of the evidence.

**Legal Analysis**

**A. Sufficiency of the Evidence**

{¶ 16} A sufficiency-of-the-evidence challenge requires a determination of whether the State has met its burden of production at trial. *State v. Hunter*, 2006-Ohio-20, ¶ 41 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997). An appellate court reviewing sufficiency of the evidence must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. With a sufficiency inquiry, an appellate court does not review whether the State's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 2009-Ohio-3375, ¶ 25 (8th Dist.), citing *Thompkins* at 387. A sufficiency-of-the-evidence argument is not a factual determination, but a question of law. *Id.*

{¶ 17} In a sufficiency inquiry we assume the State's witnesses testified truthfully and evaluate whether that testimony, along with any other evidence introduced at trial, satisfies each element of the offense. *In re D.R.S.*, 2016-Ohio-3262, ¶ 23 (8th Dist.). The elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *See, e.g., State v. Wells*, 2021-Ohio-2585, ¶ 25 (8th Dist.), citing *State v. Durr*, 58 Ohio St.3d 86 (1991). Direct evidence and circumstantial evidence have "equal evidentiary value." *Wells* at ¶ 26, citing *State v. Santiago*, 2011-Ohio-1691, ¶ 12 (8th Dist.).

{¶ 18} Ogletree argues that where M.C. produced a pair of scissors during her interaction with Ogletree and she did not testify as to another weapon with which Ogletree cut her temple, there was insufficient evidence to support the charges of felonious assault. The State counters that sufficient evidence was introduced in support of the felonious assault charges where M.C. testified that a weapon was used during an emotionally heightened altercation in which Ogletree threatened M.C.'s life and Ogletree used sufficient force to cause a serious head injury to M.C.

{¶ 19} The trial court convicted Ogletree on two counts of felonious assault in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2). The relevant statute reads:

> (A) No person shall knowingly do either of the following:
> (1) Cause serious physical harm to another or to another's unborn;
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

R.C. 2903.11.

{¶ 20} R.C. 2901.01(A)(3) defines physical harm to persons as any injury, regardless of its gravity or duration. Serious physical harm to a person is

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
> (b) Any physical harm that carries a substantial risk of death;
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5). This court has consistently held that a victim who sustains an injury that requires stitches has incurred serious physical harm for purposes of a felonious-assault conviction. *State v. Wilson*, 2023-Ohio-218, ¶ 25 (8th Dist.), quoting *State v. Finley*, 2019-Ohio-3891, ¶ 28 (8th Dist.), quoting *State v. Studgions*, 2010-Ohio-5480, ¶ 10 (8th Dist.), citing *State v. Churchwell*, 2007-Ohio-1600, ¶ 28 (8th Dist.).

{¶ 21} Ogletree does not argue the State failed to demonstrate M.C. sustained physical harm or serious physical harm but contends that the State introduced insufficient evidence to show the physical harm to M.C. was caused by a deadly weapon. "'Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). This court in *State v. Tripplett*, 2023-Ohio-4644 (8th Dist.), explained the analysis applied to determine what constitutes a deadly weapon:

> "The test for whether something is a deadly weapon is not whether it in fact inflicted a fatal injury, but whether it is capable of doing so.'" *State v. Grayson*, 2021-Ohio-4312, ¶ 34 (8th Dist.). Generally, "a trier of fact 'is permitted to infer the deadly nature of an instrument from the facts and circumstances of its use.'" *State v. Dean*, 9th Dist. Lorain No. 18CA011290, 2019-Ohio-1391, ¶ 10, quoting *State v. Vondenberg*, 61 Ohio St.2d 285, 289, 401 N.E.2d 437 (1980). The size and composition of the item wielded as a weapon is generally immaterial. "No item, no matter how small or commonplace, can be safely disregarded for its capacity to cause death when it is wielded with the requisite intent and force." *State v. Moody*, 5th Dist. Licking No. 09 CA 90, 2010-Ohio-3272, ¶ 40, citing *In re Smith*, 142 Ohio App.3d 16, 753 N.E.2d 930 (8th Dist.2001), and *State v. Deboe*, 62 Ohio App.2d 192, 406 N.E.2d 536 (6th Dist.1977). Thus, the legal test is not based on the outcome of the assault, but rather the capability to turn the everyday item into and be

used as a deadly weapon. Generally, what constitutes a "deadly weapon" is an issue for the trier of fact.

*Id.* at ¶ 20.

{¶ 22} While an object on its own, such as a pair of scissors, may not constitute a deadly weapon, "'the manner of use of the instrument, its threatened use, and its nature determine its capability to inflict death.'" *State v. Berry*, 2003-Ohio-6642, ¶ 13, quoting *State v. Deboe*, 62 Ohio App.2d 192 (6th Dist. 1977). For instance, a piece of wood with the words "whup ass stick number 1" written on its face was a deadly weapon because the stick was of sufficient weight to knock the victim to the ground and inflict bruising and multiple lacerations that required medical attention and resulted in the victim suffering from headaches and blurred vision. *Berry* at ¶ 13. Additionally, a shiny piece of metal constituted a "deadly weapon" because the

> jury could likely view a shiny piece of metal that was used to cut and stab someone as being very similar to a knife. A knife is not presumed to be a deadly weapon. *Id.* But Officer Ifft's testimony and resulting wound, especially when viewed in a light most favorable to the state, could lead a reasonable jury to conclude that the shiny piece of metal was a deadly weapon. Officer Ifft's wound required nine stiches to close, some of which were deep in his arm. This demonstrated that the shiny piece of metal penetrated deep into his arm and was capable of causing a serious physical injury. Had appellant stabbed Officer Ifft in the neck or chest, his injury could have been deadly.

*State v. Burns*, 2012-Ohio-2698, ¶ 30 (7th Dist.). *See Tripplett* at ¶ 21. (The trier of fact was permitted to draw an inference from Tripplett's use of a bottle as a deadly weapon where "the victim testified that she was repeatedly struck with the bottle

with sufficient force to cause serious physical harm. Tripplett then tried to 'finish [her] off' by choking her to the point that she was 'fading away.'").

{¶ 23} Here, Ogletree allegedly cut M.C.'s face with an unknown object. M.C. testified that Ogletree may have used the scissors she wielded at Ogletree or another object he removed from his pocket — she was unable to identify the weapon and no weapon was recovered at the scene or introduced at trial. M.C. informed Officer Vajusi that Ogletree often carried a knife or screwdriver in his pocket. M.C. was unable to state with any certainty the object that Ogletree used to cut her face but the uncontroverted testimony was that M.C. sustained an injury to her face that required six stitches at the emergency room. Additionally, M.C. testified about Ogletree's comments during the altercation that she interpreted as threats upon her life.

{¶ 24} Under the facts and circumstances presented at trial, the trier of fact was permitted to draw an inference that Ogletree used a deadly weapon — whether it was a pair of scissors or something he withdrew from his pocket — that he used to cause serious physical harm to M.C. For the foregoing reasons, we overrule Ogletree's first assignment of error.

## B. Manifest Weight of the Evidence

{¶ 25} A manifest weight challenge questions the credibility of the evidence presented and examines whether the State met its burden of persuasion at trial. *State v. Whitsett*, 2014-Ohio-4933, ¶ 26 (8th Dist.), citing *Thompkins*, 78 Ohio St.3d 380 at 387 (1997); *State v. Bowden*, 2009-Ohio-3598, ¶ 13 (8th Dist.), citing

*Thompkins* at 390. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983), paragraph three of the syllabus. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin*.

{¶ 26} Ogletree contends that his convictions are against the manifest weight of the evidence because M.C. lacked credibility. Specifically, Ogletree argues that the trial court's granting of his Crim.R. 29 motion on the burglary charges and finding Ogletree not guilty of strangulation reflected the trial court's determination that M.C. was not credible and, by extension, her testimony on the felonious assault charges also had to lack credibility. Ogletree concedes M.C. sustained a head injury but argues that without testimony clearly identifying the weapon, the felonious-assault convictions were against the manifest weight of the evidence. Ogletree also claims M.C. testified she was not injured by her own scissors but a "mysterious item." Appellant's brief, p. 14.

{¶ 27} We have previously addressed this court's acceptance of the factfinder's decisions on credibility:

> When we examine witness credibility, we must be mindful that "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 22 Ohio B. 199, 489 N.E.2d 277 (1986). The trier of fact "is in the best position to observe the witnesses' demeanor, voice inflection, and mannerisms in determining each witness's credibility." *State v. Hughes*, 8th Dist. Cuyahoga No. 81768, 2003-Ohio-2307, ¶ 26. Furthermore, a trier of fact is free to believe all, some, or none of the testimony of each witness appearing before it. *Iler v. Wright*, 8th Dist. Cuyahoga No. 80555, 2002-Ohio-4279, ¶ 25.

*State v. Williams*, 2019-Ohio-794, ¶ 28 (8th Dist.). Ogletree was charged with aggravated burglary, felonious assault, and strangulation. The State had to provide different elements for each of those offenses. Simply because the trier of fact found M.C.'s testimony did not support the strangulation or burglary charges did not establish that her testimony also failed to support the felonious assault allegations.

{¶ 28} The factfinder here, the trial court, found M.C.'s testimony demonstrated she sustained serious physical harm — stitches — caused by a deadly weapon. M.C. did not testify, as Ogletree asserts, with certainty that he cut her with an unknown object. M.C. testified that as Ogletree choked her, he either took something from his pocket or took the scissors from her hand and stabbed her in the face. M.C. testified about how she sustained the cut on her face and the need for stitches, and Officer Vajusi testified that she observed the resulting blood and injury.

{¶ 29} Ogletree also argues that M.C. repeatedly pursued, antagonized, and aggravated him even after he attempted to remove himself from the situation and

she did not share this information with the police. In contrast to this argument, M.C. clearly stated during trial that she pursued Ogletree both times after he left her apartment. Additionally, Ogletree fails to cite any legal authority showing these acts exonerate him from felonious assault charges.

**{¶ 30}** After a thorough review of the record, and weighing all the evidence, we cannot say that this is one of the rare cases in which the trier of fact lost its way. Ogletree's convictions were not against the manifest weight of the evidence and, thus, we overrule his second assignment of error.

**{¶ 31}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
WILLIAM A. KLATT, JUDGE*

EMANUELLA D. GROVES, P.J., and
SEAN C. GALLAGHER, J., CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)