[Cite as *State v. Hinton*, 2025-Ohio-963.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                          No. 113836

    v.                                   :

THOMAS HINTON,                          :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 20, 2025

---

Criminal Appeal from the Cuyahoga County Common Pleas Court
Case No. CR-23-683910-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jeffrey S. Schnatter, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Thomas Hinton ("Hinton") appeals his convictions and sentence and asks this court to reverse his convictions and vacate his sentence. We affirm Hinton's convictions and sentence.

**{¶2}** After a bench trial, Hinton was found guilty of one count of aggravated murder, in violation of R.C. 2903.01(A), two counts of murder, in violation of R.C. 2903.02(A) and (B); two counts of felonious assault, in violation of R.C. 2903.11(A)(1) and (2); and one count of having weapons while under disability, in violation of R.C. 2923.13(A)(3). The first five counts contained one- and three-year firearms specifications. All counts contained a forfeiture specification for the gun used to commit the offenses. Counts 2 through 5 were merged into count one, aggravated murder. The trial court sentenced on Count 6, having weapons while under disability, and two firearm specifications. The trial court sentenced Hinton to life without the possibility of parole to be served consecutively to six years' imprisonment for the firearm specifications. The court awarded 259 days of jail-time credit.

## I.  Facts and Procedural History

**{¶3}** On July 5, 2023, police officers from the Cuyahoga Metropolitan Housing Authority ("CMHA") responded to a call concerning a man that was assaulted. Tr. 124. When they arrived, they observed paramedics loading a man into the ambulance, who was bleeding from the face. Tr. 125. The police were informed by paramedics that the man could not speak. *Id.* Police observed keys on the ground near a pool of blood left by the male victim on the sidewalk. Tr. 130. The police discovered that the keys belonged to the victim, Duane Jones ("Jones").

**{¶4}** During the course of their investigation, officers went to the hospital where the ambulance transferred the victim. Tr. 136. When they arrived, they

were unable to speak to the victim, but did speak with medical staff. The officers were wearing body cameras and captured a video of Emergency Medical Services ("EMS") rendering aid to Jones. Tr. 142. At trial, the State played the video, with an objection from the defense. Tr. 140.

{¶5} Also, during the course of their investigation, the police retrieved a surveillance video from the apartment complex located at the scene. Tr. 152. The surveillance video showed a vehicle pulling into the parking lot of the apartment building. A man, who was eventually identified as Jones, exited the apartment building, and another man, later identified as Hinton, exited the vehicle. Hinton was observed assaulting Jones with a gun. Tr. 156. Hinton was observed hitting Jones in the head with a gun, kicking Jones in the head, and stomping on Jones's head while Jones was on the ground. Tr. 159. Hinton attempted to discharge the firearm, but the gun appeared to have jammed. Tr. 157-158. According to the surveillance video, Hinton assaulted Jones for over 25 minutes, taking brief breaks when vehicles pass by the scene. Tr. 160.

{¶6} Later, during the assault, Jones sat up and touched Hinton's car. Jones grabbed Hinton by the shirt and dragged him away from the car. Tr. 163. Then, Hinton pistol whipped Jones, and Jones fell to the ground underneath the tire of Hinton's vehicle. *Id*. Hinton got into the vehicle, but got out and started beating Jones again, stomping him in the back of the head, while Jones was lying face down. Tr. 166. Jones was on the ground until the medics arrived. Tr. 171.

{¶7} Later that same day, while conducting their investigation, the police learned that the assault on Jones was because of a drug deal. Tr. 172. While at the scene, one of the police officers observed the same Cadillac from the surveillance video coming into the parking lot of the apartment building and radioed the other officers, alerting them to the Cadillac's presence in the parking lot. The other officers entered unmarked, undercover vehicles and started following the Cadillac. They conducted a traffic stop on the Cadillac, and the driver was identified as Hinton. Tr. 175.

{¶8} The officers asked Hinton to step out of the car. The officers were wearing body cameras that recorded Hinton stating that he sells marijuana and crack cocaine at the apartment building where Jones was beaten. Tr. 334-335. During this time, the officers observed blood on one of Hinton's shoes. Tr. 177. Hinton was placed in handcuffs, and the officers continued searching Hinton's vehicle. They discovered a possible blood stain on the side of the vehicle, took a swab, and placed it into an evidence bag. The officers obtained a search warrant to search the Cadillac and found a gun, Hinton's cell phone, and Hinton's identification. They observed that there was blood on the gun and hair fiber stuck in the recoil spring. Also, they discovered that a spent shell casing was inside of the gun, which means that the firearm was discharged, but jammed. Tr. 157-158. After testing at the lab, the blood on Hinton's shoe was a DNA match for Jones's blood. Tr. 237. The blood found on the gun was also matched to Jones. Tr. 229.

It was determined that the stain on the Cadillac was not blood, so no further testing was done.

{¶9} A cell phone extraction company analyzed the data on Hinton's cell phone. Tr. 351. The data on Hinton's cell phone revealed that there were text messages between Hinton and Jones and that Jones's cell phone number was saved in Hinton's phone. Tr. 352-353. Based on the text messages, the police were able to ascertain that Jones owed Hinton money. Tr. 354-357. Hinton also asked Jones if he had to physically come and get his money from Jones and told Jones that "he would catch him." Tr. 357.

{¶10} After the assault on Jones, he did not regain consciousness and died on July 15, 2023. Tr. 296. Jones died from pneumonia due to blunt impact to his head with a subdural hematoma and brain injuries. *Id.* As a result, Jones's manner of death was classified as a homicide.

{¶11} Hinton was charged with aggravated murder, murder, felonious assault, and having a weapon while under disability. Hinton opted for a bench trial, waiving his right to a jury trial. During the trial, after the State presented its case, Hinton moved the court for an acquittal. Tr. 375. The trial court denied his motion. Tr. 377. Hinton did not call any witnesses at trial. *Id.* At the end of the trial, the trial court found Hinton guilty on all counts. The trial court sentenced Hinton to life imprisonment without parole on the aggravated murder count and merged Counts 2 through 5 for the purposes of sentencing. Hinton was sentenced to two years' imprisonment on Count 6, weapons while under disability. Counts 1

and 6 were run concurrently to one another. The trial court ran the three-year gun specification on the aggravated murder count consecutively to the three-year gun specification on the murder count, for a mandatory sentence of six years' imprisonment. Hinton's final sentence was life without parole plus six years for the gun specifications.

**{¶12}** Hinton filed this appeal, assigning five errors for our review:

1.    The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish the elements necessary to support the convictions beyond a reasonable doubt;

2.    Appellant's convictions were against the manifest weight of the evidence;

3.    Appellant was deprived of his right to effective assistance of counsel under the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution;

4.    The trial court erred by allowing the State to elicit inadmissible hearsay testimony over defense objection and depriving appellant of due process and a fair trial in violation of his federal and state constitutional rights; and

5.    Appellant's sentence is contrary to law because the imposition of multiple consecutive sentences for firearm specifications is unconstitutional where the charge related to the second firearm specification was merged for purposes of sentencing as mandated by law.

## II.   Crim.R. 29

### A.   Standard of Review

**{¶13}** "Crim.R. 29(A)(1) provides that a court 'shall order the entry of the judgment of acquittal of one or more offenses . . . if the evidence is insufficient to

sustain a conviction of such offense or offenses.'" *State v. McQuisition*, 2024-Ohio-3011, ¶ 24 (8th Dist.). "A Crim.R. 29 motion questions the sufficiency of the evidence, and we apply the same standard of review to a trial court's ruling on a Crim.R. 29 motion as we do in reviewing challenges to the sufficiency of the evidence presented at trial." *Id.*, citing *Fairview Park v. Peah*, 2021-Ohio-2685, ¶ 37 (8th Dist.).

**{¶14}** "'[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt.'" *Id.* at ¶ 25, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *id.* at paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307 (1979). "'In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.'" *Id.*, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

### B. Law and Analysis

**{¶15}** In Hinton's first assignment of error, he argues that the trial court erred when it denied his motion for acquittal under Crim.R. 29, contending that the State failed to present sufficient evidence to support his convictions. Specifically, Hinton argued that the State failed to prove Hinton caused Jones's

death purposely with prior calculation and design, which is necessary to sustain a conviction for aggravated murder.

{¶16} R.C. 2903.01(A) states, in pertinent part: "No person shall purposely, and with prior calculation and design, cause the death of another. . . ." "Prior calculation and design has been defined by Ohio courts as the presence of sufficient time and opportunity for the planning of an act of homicide." (Cleaned up.) *State v. Hughley*, 2020-Ohio-4741, ¶ 36 (8th Dist.). "The finding of prior calculation and design turns upon the particular facts and evidence presented at trial and must be determined on a case-by-case basis." (Cleaned up.) *Id.*

{¶17} "Prior calculation and design has been interpreted to mean more than a momentary deliberation; it requires a scheme designed to implement the calculated decision to kill." (Cleaned up.) *State v. Smith*, 2021-Ohio-1185, ¶ 9 (8th Dist.). "While neither the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves, momentary [or immediate] deliberation is insufficient." (Cleaned up.) *Id.*

{¶18} "Thus,

> [t]he state can prove "prior calculation and design" from the circumstances surrounding a murder in several ways, including: (1) 'evidence of a preconceived plan leading up to the murder'; (2) 'evidence of the [defendant's] encounter with the victim, including evidence necessary to infer that the defendant had a preconceived notion to kill regardless of how the [events] unfolded' or (3) 'evidence that the murder was executed in such a manner that circumstantially proved the defendant had a preconceived plan to kill,' such as where the victim is killed in a cold-blooded, execution-style manner. *State v. Orr*, 2014-Ohio-4680, ¶ 75 (8th Dist.), citing *State v. Dunford*, 2010-Ohio-1272, ¶ 53 (11th Dist.); *State v. Trewartha*, 2005-Ohio-

5697, (10th Dist.); *State v. Hough*, 2010-Ohio-2770, ¶ 19 (8th Dist.) ('[I]f the victim is killed in a cold-blooded, execution-style manner, the killing bespeaks aforethought, and a jury may infer prior calculation and design.').

*State v. Maxey*, 2024-Ohio-1279, ¶ 40 (8th Dist.), quoting *State v. Hicks*, 2015-Ohio-4978, ¶ 40 (8th Dist.).

{¶19} "'There is no bright-line test for determining the presence or absence of prior calculation and design; however, the Ohio Supreme Court has identified several factors to be weighed along with the totality of the circumstances surrounding the murder in determining the existence of prior calculation and design.'" *Id.* at ¶ 41, quoting *id.* at ¶ 41. The following factors are to be taken into consideration: "'whether the defendant and the victim knew each other and, if so, whether the relationship was strained; whether there was thought or preparation in choosing the murder weapon or murder site; and whether the act was drawn out or an almost instantaneous eruption of events.'" *Id.*, quoting *id.*, citing *State v. Taylor*, 78 Ohio St.3d 15, 19 (1997).

{¶20} First, the evidence is sufficient to prove that Hinton and Jones knew each other. Their phone numbers were saved in each of their phones, and the record demonstrates from the text messages that Hinton was Jones's drug dealer. Also from the text messages, it demonstrates that their relationship was strained from Jones owing Hinton money. The record reveals that Hinton threatened Jones in the text messages. Second, the evidence is also sufficient to prove that there was thought or preparation in choosing the murder weapon. The surveillance video

showed that Hinton brought a gun to meet Jones, pointed the gun at him several times, and attempted to fire the gun. When the gun did not fire, Hinton returned to Jones and started stomping him on the head. Third, the evidence is sufficient to prove that the act was drawn out. Hinton brutally beat Jones for over 25 minutes, hitting Jones in the head with a gun, kicking Jones in the head, and stomping on Jones's head while Jones was on the ground. Hinton even retreated to his car, got out, and started beating Jones again. The evidence sufficiently demonstrates that the State proved Hinton caused Jones's death purposely with prior calculation and design.

{¶21} Hinton further argues that the State failed to prove that he knowingly caused or attempted to cause physical harm by means of a deadly weapon. R.C. 2903.11(A)(2) states, in pertinent part: "No person shall knowingly do either of the following: Cause or attempt to cause physical harm to another. . .by means of a deadly weapon or dangerous ordnance." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." *State v. Carson*, 2025-Ohio-166, ¶ 15 (8th Dist.), quoting R.C. 2901.22(B).

{¶22} Hinton contends that there is no evidence that a gun was ever fired during the incident and that merely pointing a gun at Jones was not sufficient to convict Hinton of knowingly causing physical harm by means of a deadly weapon. Hinton's contentions are not well taken. The surveillance video showed Hinton beating Jones with a gun repeatedly. "'Deadly weapon' means any instrument,

device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." *State v. Ogletree*, 2025-Ohio-371, ¶ 21 (8th Dist.), quoting R.C. 2923.11(A).

{¶23} "This court in *State v. Tripplett*, 2023-Ohio-4644 (8th Dist.), explained the analysis applied to determine what constitutes a deadly weapon:

> The test for whether something is a deadly weapon is not whether it in fact inflicted a fatal injury, but whether it is capable of doing so. *State v. Grayson*, 2021-Ohio-4312, ¶ 34 (8th Dist.). Generally, a trier of fact "is permitted to infer the deadly nature of an instrument from the facts and circumstances of its use." *State v. Dean*, 2019-Ohio-1391, ¶ 10 (9th Dist.), quoting *State v. Vondenberg*, 61 Ohio St.2d 285, 289 (1980). The size and composition of the item wielded as a weapon is generally immaterial. No item, no matter how small or commonplace, can be safely disregarded for its capacity to cause death when it is wielded with the requisite intent and force. *State v. Moody*, 2010-Ohio-3272, ¶ 40 (5th Dist.), citing *In re Smith*, 142 Ohio App.3d 16 (8th Dist. 2001), and *State v. Deboe*, 62 Ohio App.2d 192 (6th Dist. 1977). Thus, the legal test is not based on the outcome of the assault, but rather the capability to turn the everyday item into and be used as a deadly weapon. Generally, what constitutes a deadly weapon is an issue for the trier of fact.

*Ogletree* at ¶ 21, quoting *Tripplett* at ¶ 20.

{¶24} The record and evidence demonstrate that Hinton knowingly caused physical harm to Jones using a deadly weapon. It matters not that Hinton fired the gun because he used it to beat Jones in the head. "While an object on its own, such as a pair of scissors, may not constitute a deadly weapon, 'the manner of use of the instrument, its threatened use, and its nature determine its capability to inflict death.'" *Id.* at ¶ 22, quoting *State v. Berry*, 2003-Ohio-6642, ¶ 13. Hinton

is aware that beating someone in the head with an object could cause physical harm. In fact, his purpose was to cause physical harm to Jones.

**{¶25}** Hinton further argues that the evidence was insufficient to establish that he was the one who committed the crime. He contends that there was not an eyewitness to crime that identified him and the evidence used was circumstantial. "[C]ircumstantial evidence may be sufficient to establish the identity of the accused." *State v. Toby*, 2018-Ohio-3369, ¶ 21 (8th Dist.), citing *State v. McKnight*, 2005-Ohio-6046, ¶ 75; *State v. Kiley*, 2006-Ohio-2469, ¶ 10 (8th Dist.); *Cleveland v. Williams*, 2015-Ohio-1739, ¶ 25 (8th Dist.).

**{¶26}** There was sufficient evidence to demonstrate that Hinton was the assailant. First, there were text messages between Hinton and Jones that revealed Jones owed money to Hinton, and Hinton threatened Jones. Second, the vehicle in the surveillance video was identical to the vehicle that police officers observed Hinton driving after the assault. Third, Jones's blood was found on Hinton's shoes, and the gun was found in Hinton's vehicle. Given the totality of the evidence, we find it was sufficient to demonstrate that Hinton was the assailant. *See State v. Mallory*, 2018-Ohio-1846, ¶ 7 (8th Dist.), quoting *State v. Scott*, 3 Ohio App.2d 239, 244 (11th Dist. 1965) ("'The general rule is that to warrant conviction the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime.'").

{¶27} Therefore, we find that the evidence was sufficient to convict Hinton of aggravated murder and felonious assault, and thus the trial court did not err when it denied Hinton's motion for acquittal under Crim.R. 29.

{¶ 28} Hinton's first assignment of error is overruled.

## III. Manifest Weight of the Evidence

### A. Standard of Review

{¶29} "When reviewing whether a bench trial verdict is against the manifest weight of the evidence, an appellate court will not reverse the conviction so long as the trial court, who served as the factfinder rather than a jury, could reasonably conclude from substantial evidence that the State proved the offense beyond a reasonable doubt." (Cleaned up.) *State v. Kyles*, 2024-Ohio-5817, ¶ 9 (8th Dist.). "To warrant reversal under a manifest-weight challenge, this court must determine that the trial court clearly lost its way and created such a manifest miscarriage of justice that the [bench trial] judgment must be reversed and a new trial ordered." (Cleaned up.) *Id.* "A conviction should be reversed as against the manifest weight of the evidence only in the most exceptional case in which evidence weighs heavily against the conviction." (Cleaned up.) *Id.*

### B. Law and Analysis

{¶30} In Hinton's second assignment of error, he argues that his convictions are against the manifest weight of the evidence. Specifically, he argues the same points made in his sufficiency argument. As previously stated, the evidence is sufficient to demonstrate that Hinton was the assailant, committed the

aggravated murder of Jones, and knowingly caused physical harm using a deadly weapon.

{¶31} "In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess." *State v. Jackson*, 2018-Ohio-3492, ¶ 22 (8th Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraphs one and two of the syllabus. "Reversal on manifest weight grounds is reserved for the 'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶32} The record does not demonstrate that the evidence weighs heavily against the conviction or that the trial court lost its way and created a manifest miscarriage of justice. Therefore, Hinton's second assignment of error is overruled.

## IV. Ineffective Assistance of Counsel

### A. Standard of Review

{¶33} "Courts considering whether an attorney's performance fell below an objective standard of reasonableness 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Thompson*, 2024-Ohio-5910, ¶ 6 (8th Dist.), quoting *Strickland v. Washington*, 466 U.S. 668, 689, 694 (1984). "A defendant establishes prejudice by showing that 'there exists a reasonable probability that,

but for counsel's error, the result of the proceeding would have been different.'" *Id.*, quoting *State v. Davis*, 2020-Ohio-309, ¶ 10.

### B. Law and Analysis

**{¶34}** In Hinton's third assignment of error, he argues that he was deprived of his right to effective assistance of counsel when his trial counsel did not object to the testimony of the State's expert witness on the DNA analysis. Hinton contends that the expert did not state his conclusions within a reasonable degree of scientific certainty but instead stated that the results were reliable and he was confident in them.

**{¶35}** To establish a claim of ineffective assistance of counsel, Hinton "'must demonstrate that (1) his counsel was deficient in some aspect of his representation and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.'" *Thompson* at ¶ 5, quoting *In re S.A.*, 2019-Ohio-4782, ¶ 46, citing *Strickland* at 687-688, 694. "Thus, the failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel." (Cleaned up.) *Id.*

**{¶36}** Hinton's argument is identical to the one that the appellant made in *State v. Thompson*, 2014-Ohio-4751, ¶ 129, where Thompson, the appellant, argued that the expert witness did not give his opinion in terms of a reasonable degree of scientific certainty. In response, the Supreme Court stated: "We have 'held that expert witnesses in criminal cases can testify in terms of possibility rather than in terms of a reasonable scientific certainty or probability.'" *Id.*,

quoting *State v. Lang*, 2011-Ohio-4215, ¶ 77, citing *State v. D'Ambrosio*, 67 Ohio St.3d 185, 191 (1993). "In the criminal context, questions about certainty go not to admissibility but to sufficiency of the evidence; they are matters of weight for the jury." *Id.*, citing *id.* at ¶ 77. The Supreme Court held that no error occurred when the expert witness testified in terms of possibilities. *Id.*

{¶37} We find that Hinton was not deprived of his right to effective assistance of counsel because his trial counsel was not deficient for not objecting to the testimony of the expert witness. Therefore, Hinton's third assignment of error is overruled.

## V. Hearsay Testimony

### A. Standard of Review

{¶38} "The admission or exclusion of evidence is within the purview of the trial court, and we review these decisions for an abuse of discretion." *State v. Hughes*, 2021-Ohio-2764, ¶ 39 (8th Dist.). "Hearsay is an out-of-court statement that is offered to prove the truth of the matter asserted." *Id.*, citing Evid.R. 801(C). "Hearsay is generally prohibited, unless such testimony is subject to an exception." *Id.*, citing Evid. R. 802. "Where error in the admission of evidence was caused by the party complaining of the error, the party cannot benefit from the error on

appeal." *Id.*, citing *State v. Jackson*, 2006-Ohio-174, ¶ 28 (8th Dist.), citing *State v. Woodruff*, 10 Ohio App.3d 326, 327 (2d Dist. 1983).

**{¶39}** An abuse of discretion occurs when a court exercises its judgment "in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. "An abuse of discretion 'implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'" *Id.*, quoting *Schleich v. Penn Cent. Corp.*, 2024-Ohio-5005, ¶ 9 (8th Dist.).

**B.    Law and Analysis**

**{¶40}** In Hinton's fourth assignment of error, he argues that the trial court allowed inadmissible hearsay testimony over his objections. First, Hinton contends that the trial court erred by allowing testimony regarding one of the police officers observing the Cadillac from the surveillance video in the apartment's parking lot. It was testified to that the officer radioed the other officers, alerting them that there was a vehicle matching the description of the Cadillac from the video.

**{¶41}** Hinton's arguments are not well taken. "'In general, statements offered by police officers explaining their conduct while investigating a crime are not hearsay because they are not offered for their truth, but, rather, are offered as an explanation of the process of investigation.'" *State v. Thompson*, 2019-Ohio-2525, ¶ 28 (8th Dist.), quoting *State v. Warren*, 2004-Ohio-5599, ¶ 46 (8th Dist.). The police officer's testimony was explaining how they came to conduct a traffic

stop on the Cadillac during the process of their investigation. Thus, these statements are not inadmissible hearsay testimony.

**{¶42}** Second, Hinton contends that the trial court erred by allowing the video of the police officer's body camera where statements were made by paramedics. Hinton does not state which statements were inadmissible hearsay or provide any relevant law to support his claim as required by App.R. 16(A)(7). Third, Hinton argues that the trial court erred by allowing testimony regarding how the police officers obtained the license plate of the Cadillac. Again, Hinton does not provide any relevant law to support his claim as required by App.R. 16(A)(7).

**{¶43}** "App.R. 16(A)(7) requires an appellant to include within his brief '[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.'" *Walsh v. Walsh*, 2023-Ohio-1675, ¶ 9 *(*8th Dist.) "According to App.R. 12(A)(2), an appellate court may decline to address an assignment of error if an appellant fails to cite any legal authority to support his argument." *Id.*, citing *Thornhill v. Thornhill*, 2009-Ohio-5569, ¶ 11 (8th Dist.) (court declined to address assignments of error when appellant failed to cite any supporting case law or statute). Thus, we will decline to address these arguments.

**{¶44}** Fourth, Hinton argues that the trial court admitted inadmissible hearsay testimony when the police officer testified that the altercation between

Hinton and Jones was over a drug deal. Again, "statements offered by police officers explaining their conduct while investigating a crime are not hearsay because they are not offered for their truth, but, rather, are offered as an explanation of the process of investigation." *Thompson* at ¶ 28. The testimony was used to explain why Hinton's phone was searched for drug-related conversations.

**{¶45}** We determine that the trial court did not admit inadmissible hearsay testimony. Therefore, Hinton's fourth assignment of error is overruled.

## VI. Firearm Specification Sentencing

**{¶46}** In Hinton's fifth and final assignment of error, he argues that his sentence is contrary to law because the imposition of multiple consecutive sentences for firearm specifications is unconstitutional where the charge relating to the second firearm specification was merged for purposes of sentencing. Hinton acknowledges that he raised this assignment of error to preserve his objection for further review based upon the rationale in the dissenting opinion in *State v. Bollar*, 2022-Ohio-4370.

**{¶47}** In *Bollar*, the Supreme Court held:

> We conclude that the approach taken by the Eighth District in *Doyle* and by the Ninth District in *Roper* is in tension with the plain language of R.C. 2929.14(B)(1)(g). As noted above, that statute requires that the offender receive prison terms for each of the two most serious firearm specifications when the offender pleads guilty to multiple felony offenses (and at least one of those is a felony listed in the statute) and also pleads guilty to multiple accompanying

specifications. The statute makes no exception to the application of its provisions if one of the underlying felony offenses has been merged. Instead, it simply applies whenever the offender has pleaded guilty to (or been found guilty of) multiple felony offenses and multiple specifications.

*Id.* at ¶ 19.

**{¶48}** Therefore, Hinton's fifth assignment of error is overruled.

**{¶49}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EILEEN T. GALLAGHER, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)